```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                  :
OAK PLAZA, LLC
                                  :

     v.                           :   Civil Action No. DKC 22-0231

                                  :
DAVID T. BUCKINGHAM, et al.
                                  :
```

**MEMORANDUM OPINION**

Perplexed by the confusing pleadings and papers filed in this limited liability company ("LLC") fraud case, the court directed the removing Defendant Philip McNutt to file a memorandum demonstrating citizenship diversity. (ECF No. 9; *see* ECF Nos. 16; 24). In parallel, three Defendants have filed motions to dismiss. Certain arguments made in the motions filed by Defendant McNutt and Defendant Susan Buckingham bear on the diversity question, although their merits are not now addressed. (ECF Nos. 10; 17). The diversity jurisdiction issue has been briefed and no hearing is necessary. Local Rule 105.6. For the following reasons, however, the court still is unable to determine whether diversity jurisdiction exists and will order supplemental briefing.

I.  **Background**

This case centers on the Buckingham family, their now dissolved limited liability company, Oak Plaza, LLC ("Oak Plaza"), and its wholly owned subsidiary, Tower Oaks Boulevard, LLC ("Tower

Oaks"). The five Buckingham siblings, David, Richard, Susan, Daniel, and Thomas were the members of Oak Plaza along with their father, John D. Buckingham, Sr., who passed away in October 2012. (ECF Nos. 1-6, at 39, 57; 2, ¶¶ 2, 11, 13).[1]  Plaintiff alleges that Daniel and Thomas became Oak Plaza managers upon their father's death but that Daniel was the sole remaining manager at all times relevant. (ECF Nos. 2, ¶ 13; 15-1, ¶ 10).

Oak Plaza was the only member of Tower Oaks. (ECF Nos. 1-6, at 83). In turn, Tower Oaks owned a commercial property located at 2701 Tower Oaks Boulevard in Rockville, Maryland. (*Id.*). It appears that Oak Plaza was first organized in 2001, (ECF No. 15-2, at 1), to become the sole member of Tower Oaks, which was separately formed in 2000, (ECF No. 1-6, at 63). Oak Plaza and Tower Oaks' operating agreements were amended in 2007. (ECF Nos. 1-6, at 76-85; 15-3, at 1-7). A second amendment in 2012, executed by the three Buckingham Defendants in this case, Richard, David, and Susan, but not signed by Thomas and Daniel, was later found to be ineffective because David acted without the necessary authority when he signed for Thomas and Daniel. *Tower Oaks Blvd., LLC v. Procida*, 219 Md.App. 376, 401-09 (2014).

---

[1] At the time of this filing, Richard Buckingham has not been served or made an appearance in this case. (See ECF Nos. 31; 32). David Buckingham and Mr. McNutt are both attorneys and are representing themselves. Daniel Buckingham's legal name is John Daniel Buckingham, Jr. (ECF No. 1-6, at 51; 17-6, at 1).

Richard, David, and Susan Buckingham, in concert with Defendants Cardinal Trust and Philip McNutt, allegedly have also acted beyond their authority, this time to obtain assets from Tower Oaks that were awarded to it in a state lawsuit against one of its tenants, Ronald Cohen Investments, Inc. ("Ronald Cohen Investments").[2,3]  That lawsuit stemmed from a period in or around 2011 when Ronald Cohen Investments stopped paying rent to Tower Oaks and Tower Oaks defaulted on a substantial loan.  *See 121 Assocs. Ltd. P'ship v. Tower Oaks Blvd., LLC*, Nos. 0906 and 1454, 2015 WL 7076013, at *1, *3 (Md.Ct.Spec.App. Nov. 12, 2015); *Procida*, 219 Md.App. at 381-82.  Foreclosure proceedings were initiated in the Circuit Court for Montgomery County and the Rockville property ultimately was sold at foreclosure in February 2013.  *Id.*, at 382-90.

---

[2] The only other tenant was Sun Control Systems, Inc. ("Sun Control").  *Tower Oaks Blvd., LLC v. Va. Commerce Bank*, No. 1463, 2015 WL 5969739, at *1 (Md.Ct.Spec.App. May 1, 2015).  Sun Control was owned by John Buckingham, Sr., and Thomas Buckingham.  *Id.*, at *1.  Daniel Buckingham helped run the business.  *Id.*  Sun Control fell behind on rent but Tower Oaks forgave at least some of the amount owed and even used part of its interest in the Rockville property to secure Sun Control loans, which Sun Control ultimately defaulted on.  *Id.*, at *2.  Sun Control's tenancy is not at issue and was litigated elsewhere.  Like here, that case dealt with the propriety of decisions ostensibly taken on behalf of Tower Oaks.  *Id.*, at *4-6.

[3] "A federal district court may take judicial notice of documents from state court proceedings and other matters of public record."  *Green v. Wells Fargo Bank, N.A.*, 927 F.Supp.2d 244, 246 n.2 (D.Md. 2013).

After Tower Oaks' default, it, along with Oak Plaza, Richard, Susan, and David Buckingham (acting as guardian to his father), successfully sued Ronald Cohen Investments for breach of contract. *See 121 Assocs. Ltd.*, 2015 WL 7076013, at *1-2. The parties allege that in May 2014 Tower Oaks and its co-plaintiffs were awarded a judgment for more than $8 million after a jury trial. (ECF No. 2, ¶ 21). It appears, however, that some portion of that award was reversed on appeal. *121 Assocs. Ltd.*, 2015 WL 7076013, at *2, *12.

Plaintiff alleges that Defendants twice improperly obtained assets from that judgment. First, in November or December 2015, Richard Buckingham improperly assigned large portions of the judgment to himself, David, and Susan (through the Cardinal Trust). (ECF Nos. 2, ¶ 22; 1-6, at 86-91). Second, the three Buckingham Defendants improperly signed an escrow agreement in February 2017. (ECF Nos. 2, ¶ 25; 1-6, at 92-93). Then, acting at their direction in early March 2017, Philip McNutt obtained a check from the Circuit Court for Montgomery County for $1,412,405.65 payable to Tower Oaks. (ECF No. 2, ¶ 27, 36). Plaintiff alleges that Mr. McNutt later disbursed $1,340,212.98 of that amount evenly to the Buckingham Defendants over three dates: March 14, 2017, April 16, 2017, and January 16, 2019. (ECF No. 2, ¶¶ 20, 29, 38). Mr. McNutt also authorized payments from the account to his law firm for $66,626.53 and to a mediator for the Buckingham Defendants for $7,238.00. (*Id.*, ¶¶ 32, 38).

4

Ten days after the first payment was disbursed, Thomas Buckingham sued to have the Circuit Court for Montgomery County dissolve Oak Plaza, wind up its affairs, and distribute its assets. (ECF No. 17-2, at 2-3). At some point, Daniel Buckingham joined the suit as a plaintiff. (ECF No. 17-6, at 1). Mr. McNutt, acting as attorney for Oak Plaza, moved to dismiss the case for lack of subject matter jurisdiction but that motion was denied in June 2018. Docket, *Buckingham v. Oak Plaza, LLC*, No. 431544V (Circuit Court for Montgomery County). Following a trial in June and July, the Circuit Court dissolved Oak Plaza in September 2018. *Id.*; (ECF No. 1-6, at 38). The court also apparently found that Thomas Buckingham had ceased to be a member of Oak Plaza after his bankruptcy filings, as early as 2012. (ECF No. 2, ¶ 15).

The court then appointed an auditor to investigate whether Oak Plaza had any assets to be wound up and whether Tower Oaks had assets within the court's jurisdiction. The auditor submitted a final report in June 2020 which was accepted in part. Docket, *Buckingham v. Oak Plaza, LLC*, No. 431544V (Circuit Court for Montgomery County); (*see also* ECF No. 1-6, at 38-47). He concluded that "the only asset of Oak Plaza, LLC was its unliquidated interest in its wholly owned subsidiary, Tower Oaks Boulevard, LLC, and potential direct and derivative causes of action to recover [] funds received and paid out by [Tower Oaks.]" (ECF No. 1-6, at 41). He also concluded that Tower Oaks may have causes of

5

action against Richard, David, and Susan Buckingham (individually and as trustee of the Cardinal Trust), and Philip McNutt primarily because they lacked the authority to act on Tower Oaks' behalf and disburse its funds. (*Id.*, at 41-44).

In March 2021, the Circuit Court appointed Keith J. Rosa "Receiver of Oak Plaza[.]" (ECF No. 1-6, at 36). In September 2021, Thomas and Daniel asserted claims in the Oak Plaza receivership. Docket, *Buckingham v. Oak Plaza, LLC*, No. 431544V (Circuit Court for Montgomery County). In November 2021, the dissolution proceedings were postponed or continued, *id.*, and Mr. Rosa filed this suit against Richard, David, and Susan Buckingham, Cardinal Trust, and Philip McNutt in the Circuit Court for Montgomery County, (ECF No. 2, at 1). The complaint lists the plaintiff as "Oak Plaza, LLC, derivatively and on behalf of Tower Oaks, Boulevard, LLC." (*Id.*). It asserts ten claims—some against all Defendants, some against Susan, David, and Richard, and some against Mr. McNutt alone—including unjust enrichment, various theories of fraudulent concealment and constructive fraud, and legal malpractice. (*Id.*, at 7-35).

Mr. McNutt timely removed the action to this court on January 31 on diversity jurisdiction grounds. (ECF No. 1, at 2). Unsatisfied that he had met his burden to demonstrate jurisdiction upon removal, the court ordered Mr. McNutt to file a memorandum demonstrating diversity of citizenship between the parties. (ECF

No. 9).  It also invited Oak Plaza to weigh in.  (*Id.*).  Both parties responded.  (ECF Nos. 16, 24).  Concurrently, Defendants Susan Buckingham, Philip McNutt, and David Buckingham moved to dismiss the case.  (ECF Nos. 10, 17, 19).  Some arguments in those motions bear on the question of diversity jurisdiction and are therefore incorporated into the diversity analysis.  However, the motions to dismiss are not independently addressed here because it remains unclear whether the court has subject matter jurisdiction.

Most notably, Mr. McNutt argues both that this court has diversity jurisdiction while moving to dismiss the case, ostensibly for lack of standing.  (ECF Nos. 16, at 5-13; 17-1, at 17-23).  Defendant McNutt's contradictory positions "suggest that [he] improperly removed the action and that the [c]ourt lacks subject matter jurisdiction."  *D.W. ex rel. Williams v. Chesterfield Cnty. Schs.*, No. 17-cv-0679, 2018 WL 3098121, at *5 (E.D.Va. June 5, 2018), *report and recommendation adopted by* 2018 WL 3097017 (E.D.Va. June 22, 2018).  While the substance of Mr. McNutt's supposed standing argument informs the court's diversity analysis, it need not be resolved now.

Mr. McNutt "conflates two distinct concepts: a party's capacity to sue and be sued, and this court's Article III jurisdiction."  *United Supreme Council v. United Supreme Council*, 792 F.App'x 249, 255 (4th Cir. 2019).  Although Mr. McNutt invokes standing, his argument does not address whether Tower Oaks, on

7

whose behalf Oak Plaza sues, suffered a redressable injury caused by the Defendants.  Instead, Mr. McNutt argues that Mr. Rosa's appointment is void because the Circuit Court lacked jurisdiction over the dissolution action.  (ECF No. 17-1, ¶ 63).  Presumably, finding that Mr. Rosa's appointment was void would suggest that he could not file a suit in Oak Plaza's name.  That argument appears to go to whether Mr. Rosa has the capacity to sue under Rule 17(b) (to the extent it goes to any issue).  As the Fourth Circuit has made clear, capacity is non-jurisdictional.  *United Supreme Council*, 792 F.App'x at 255-56; *see* Charles A. Wright & Arthur R. Miller, *Capacity to Sue or Be Sued—In General*, Federal Practice & Procedure § 1559 (3d ed. 2022); *see also House v. Mitra QSR KNE LLC*, 796 F.App'x 783, 786-87 (4th Cir. 2019) (discussing Rule 17(a) (citing *Martineau v. Wier*, 934 F.3d 385, 391-92 (4th Cir. 2019))). Mr. McNutt's capacity arguments will be addressed if and when the court takes up the motions to dismiss.[4]

## II. Standard of Review

Under 28 U.S.C. § 1441(a), "a civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants."  As noted above, "[t]he burden of demonstrating

---

[4] Mr. McNutt also argues that Oak Plaza's dissolution was void.  It is not clear what effect finding that the dissolution was void would have on Oak Plaza's capacity to sue because, as discussed below, dissolution does not make an LLC a non-entity.

8

jurisdiction" in removal cases "resides with the party seeking removal." *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotations marks omitted). "[Q]uestions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004). Where challenged, the removing defendant must "prove by a preponderance of evidence the facts necessary to establish the court's jurisdiction." *Byrd v. Deveaux*, No. 17-cv-3251-DKC, 2018 WL 305838, at *2 (D.Md. Jan. 5, 2018) (citation omitted). "If federal jurisdiction is doubtful, a remand [to state court] is necessary." *Md. Stadium*, 407 F.3d at 260 (alteration in original) (quotation omitted); *see* 28 U.S.C. § 1447(c). Where it is not, federal courts have "a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

### III. Diversity Jurisdiction

Diversity jurisdiction requires that (1) the amount in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs," and (2) the suit be between "citizens of different States[.]" 28 U.S.C. § 1332(a)(1). There is no question that the amount in controversy exceeds $75,000 - the complaint

9

seeks more than a million dollars from each defendant jointly and severally.  (ECF No. 2, ¶¶ 137, 207).

That leaves citizenship diversity, which must be complete. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).  The presence "of a single plaintiff from the same State as a single defendant deprives the district court" of jurisdiction.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).  "[D]iversity jurisdiction must be based only on the citizenship of the real parties in interest, ignoring the citizenship of merely nominal or formal parties."  *Nat'l Ass'n of State Farm Agents, Inc. v. State Farm Mut. Auto. Ins. Co.*, 201 F.Supp.2d 525, 529 (D.Md. 2002) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)); *see also Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 n.3 (4th Cir. 2004) ("Diversity jurisdiction is [] judged by the real parties in interest."); *Roche v. Lincoln Property Co.*, 373 F.3d 610, 614-15 (4th Cir. 2004), *rev'd on other grounds sub nom.*, 546 U.S. 81 (2005).

In derivative suits, the real plaintiff in interest is the company whose rights are asserted.  *Gen. Tech. Applications*, 388 F.3d at 121 n.3 (citing *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)); *Roche*, 373 F.3d at 614; *see also Certain Interested Underwriters at Lloyd's of London v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994) ("[T]he real party in interest is the person who is entitled to enforce the right asserted[.]").  In *General Technology*

10

*Applications, Inc. v. Exro Ltda*, the Fourth Circuit held that where a member derivatively asserts the rights of an LLC, the LLC is the plaintiff in interest for diversity jurisdiction purposes. 388 F.3d at 121 n.3. Courts in this district have held the same. *Laios v. MTM Builder/Developer, Inc.*, No. 20-cv-337-GJH, 2021 WL 4478712, at *4 (D.Md. Sept. 30, 2021); *Bunnell v. Rago*, No. 14-cv-1892-WDQ, 2015 WL 996599, at *3 (D.Md. Mar. 4, 2015). Here, then, Tower Oaks is the real plaintiff in interest because Oak Plaza brings this suit derivatively to assert Tower Oaks' legal claims against Defendants.

An LLC's citizenship is based on the citizenship of its members. *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 382 (2016) (holding unincorporated entities possess their members' citizenship); *Plank v. Cherneski*, 469 Md. 548, 570 (2020) (holding LLCs are unincorporated entities). Tower Oaks' citizenship is therefore determined by the citizenship of its sole member, Oak Plaza. Ordinarily, the citizenship of Oak Plaza's members would determine its citizenship too. However, when determining diversity, "the personal citizenship [] of [a] receiver (not that of the [company] of which he [is] receiver) should govern." *Barber v. Powell*, 135 F.2d 728, 730-31 (4th Cir. 1943); *see also Gross v. Hougland*, 712 F.2d 1034, 1037 (6th Cir. 1983) ("[A fiduciary] may rely upon his citizenship if he can establish that he is the real party in interest[.]"); *Mann Bracken,*

11

*LLP v. Exec. Risk Indem., Inc.*, No. 15-cv-1406-DKC, 2015 WL 5721632, at *3 (D.Md. Sept. 28, 2015) ("[C]ourts generally treat a receiver as the plaintiff for purposes of diversity jurisdiction." (cleaned up) (citing *Mitchell v. Maurer*, 293 U.S. 237, 242 (1934)); Charles A. Wright & Arthur R. Miller, *Parties Considered in Determining Diversity*, Federal Practice & Procedure § 3606 (3d. ed. 2022) ("It is well established . . . that federal courts only consider[] the citizenship of the representative parties for purposes of determining diversity jurisdiction . . . in a suit by a receiver or similar representatives[.]"). This is true so long as the receiver was not appointed to manufacture diversity jurisdiction. *Gross*, 712 F.2d at 1037-38. The rationale for looking to the receiver's citizenship is that representatives with sufficient control over represented parties are the real parties in interest. *See Navarro Sav. Ass'n*, 446 U.S. at 464 ("[A] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others."); *Bishop v. Hendricks*, 495 F.2d 289, 291-93 (4th Cir. 1973) (distinguishing between true fiduciaries and nominal fiduciaries when determining citizenship for jurisdiction).

Mr. Rosa's citizenship determines Oak Plaza's citizenship, and by extension Tower Oaks' citizenship, because he has been appointed receiver with complete control of Oak Plaza. The Circuit

Court for Montgomery County ordered that Mr. Rosa be "appointed Receiver of Oak Plaza, LLC with full authority to wind up the affairs of Oak Plaza, LLC including but not limited to powers to issue subpoenas, retain experts, investigate and compromise claims brought for and against Oak Plaza, LLC, institute litigation, and file all required tax returns and corporate filings[.]"  (ECF No. 1-6, at 36).

A receiver's control, at least when this broad, is also exclusive.  A receiver "acts as agent for the court . . . , and is an officer of the court charged with the duty of receiving, collecting, caring for, administering, and disposing of the property of another under court supervision."  *Kluckhuhn v. Ivy Hill Ass'n*, 55 Md.App. 41, 44 (1983) (internal quotation marks and citation omitted).  Third parties, including the entity whose property is subject to receivership, cannot interfere with the receiver's possession of property.  *See id.*, at 44-45.  It is in the hands of the law, and a court "never allows any person to interfere with" such property "without its leave."  *Id.*, at 44.

That Mr. Rosa sued in Oak Plaza's name does not undermine the conclusion that Mr. Rosa is the real party in interest in any suit by or against Oak Plaza.  Courts commonly look to receiver citizenship even where the receiver sued in the LLC's name.  *Mann Bracken*, 2015 WL 5721632, at *2-4; *Growth Opportunity Connection, Inc. v. Philadelphia Indem. Ins. Co.*, No. 11-cv-0601-DGK, 2011 WL

13

6141097, at *1-2, *6 (W.D.Mo. Dec. 9, 2011). Moreover, Oak Plaza's dissolution and placement in receivership make it a nominal party that "exist[s] in name only" with "no immediately apparent stake in the litigation" for purposes of federal diversity. *See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013) (discussing nominal party exception to rule of unanimity for removal) (citation omitted); *see also Lincoln Prop.*, 546 U.S. at 92 (identifying as nominal parties those who have "no control of, impact on, or stake in the controversy").  It is Mr. Rosa who controls Oak Plaza's assets and is authorized to sue on its behalf; the LLC no longer possesses any independent ability to act.[5,6]

---

[5] It is possible that Oak Plaza's dissolution alone might not render it a nominal party.  Dissolved LLCs do not appear to become non-entities under Maryland law and continue to exist so that they may be wound up.  *See* Md. Code Ann., Corps. & Ass'ns §§ 4A-903, 904; *MT Holding Corp. I v. PNC Bank*, No. 377, 2018 WL 3993732, at *7 (Md.Ct.Spec.App. Aug. 20, 2018) (discussing LLCs in forfeiture).

[6] Mr. McNutt gestures toward possible procedural problems with finding that, as to Oak Plaza, Mr. Rosa is the real party in interest for jurisdictional purposes.  Mr. McNutt believes that this finding converts Mr. Rosa into the named plaintiff and that Oak Plaza might need to be joined as a necessary party under Rule 19.  (ECF No. 16, ¶ 17).  Mr. McNutt is mistaken.  Oak Plaza remains the named plaintiff, suing on behalf of Tower Oaks.  If anything, the reverse issue may be present, as Plaintiff may obliquely suggest when he cites to Rule 17, (ECF No. 24, ¶ 14), which requires that "[a]n action must be prosecuted in the name of the real party in interest."  It is not clear whether Mr. Rosa satisfied this requirement by suing in Oak Plaza's name rather than suing in his own name.  Of course, determining the real party in interest for diversity purposes does not necessarily resolve the Rule 17 question.  *Navarro Sav. Ass'n*, 446 U.S. at 462 n.9.

Nor does it appear, at this juncture, that Mr. Rosa was appointed to manufacture diversity. While neither party has explicitly addressed this question, there is no concrete basis on which to suggest otherwise. Most significantly, Mr. Rosa originally filed this suit in state court. The case was removed to this court on Defendant McNutt's initiative. In addition, nothing about the timing of Mr. Rosa's appointment or the powers he was granted, which extend far beyond initiating this case, suggest an attempt to manufacture jurisdiction. The court is mindful that the appointment of a receiver poses a risk of abuse because it "often results from the unilateral acts of the party contemplating litigation[.]" *Gross*, 712 F.2d at 1038. "[T]he appointment proceeding is rarely adversary in nature and, in most circumstances, the choice put forward by the party contemplating litigation is likely to be accepted by the appointing authority." *Id.* But that generalized risk is not enough, alone, to find that jurisdiction was manufactured.

It is not possible, nonetheless, to determine whether the parties in interest have diverse citizenships. Mr. Rosa appears to be a citizen of Maryland. (ECF Nos. 1, ¶ 8; 24, ¶ 3). The four individual defendants, David Buckingham, Richard Buckingham,

---

The court will not resolve that question, which is not jurisdictional, *Lincoln Property*, 546 U.S. at 90, at this time because it has only been referenced in passing.

15

Susan Buckingham, and Philip McNutt, appear to be citizens of North Carolina, Virginia, and Colorado. (*See* ECF Nos. 1, ¶ 9; 2, at 1, ¶¶ 4-8). It is not clear, however, what Cardinal Trust's citizenship is. Trust citizenship is a subject of continuing confusion. It may be determined by the citizenship of the trustees, the beneficiaries, or both, and the result may vary by the type of trust at issue. *See Zoroastrian Ctr. & Darb-E-Mehr v. Rustam Guiv Found.*, 822 F.3d 739, 748-51 (4th Cir. 2016); *Wurts v. Branch Banking & Tr. Co.*, 402 F.Supp.3d 335, 336-39 (S.D.W.V. 2019); *Daimler Tr. v. Prestige Annapolis, LLC*, No. 16-cv-0544-ELH, 2016 WL 3162817, at *16 n.13 (D.Md. June 7, 2016).

Plaintiff and Mr. McNutt allege that the sole trustee of Cardinal Trust is Susan Buckingham, who appears to be a Colorado citizen. (*See* ECF Nos. 1, ¶ 9; 2, at 1, ¶¶ 4-8). However, Ms. Buckingham attests that she was removed as trustee in August 2017. (ECF Nos. 10-1, at 6; 10-2, ¶ 11).[7] She does not identify who succeeded her, although she states that she established Cardinal Trust with Defendant David Buckingham. (ECF No. 10-1, ¶ 1). Given that the two individuals so-far affiliated with Cardinal Trust are not Maryland residents, it seems likely that diversity

---

[7] Mr. McNutt asserts that Ms. Buckingham was served in her individual capacity and her capacity as trustee of Cardinal Trust (ECF No. 4, ¶ 1). If she is not its current trustee, that service was ineffective and Plaintiff will need to serve process on the current trustee.

jurisdiction exists.  But doubts remain.  Mr. McNutt will be ordered to submit a supplemental memorandum identifying what type of trust Cardinal Trust is, who its trustees and beneficiaries are, and the citizenship of both.

## IV. Conclusion

For the foregoing reasons, the court is unable to resolve whether diversity jurisdiction exists.  Defendant McNutt will be ordered to submit supplemental briefing within fourteen (14) days.  Plaintiff may do the same.  A separate order will follow.

                                          /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge