IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OAK PLAZA, LLC

    v.

DAVID T. BUCKINGHAM, et al.

:
:
:   Civil Action No. DKC 22-0231
:
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this state law fraud case brought by the receiver for a limited liability company are a joint motion for summary judgment filed by Defendants David Buckingham, Richard Buckingham, Susan Buckingham (collectively, "the Siblings"), and Philip McNutt ("Mr. McNutt"), (ECF No. 82); and a cross-motion for summary judgment filed by Plaintiff Oak Plaza, LLC ("Oak Plaza"), derivatively and on behalf of Tower Oaks Boulevard, LLC ("Tower Oaks"), (ECF No. 96). The issues have been briefed in part, and the court now rules solely on some of the liability issues, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' joint motion for summary judgment will be denied; and Plaintiff's cross-motion for summary judgment will be granted in part and denied in part.[1] As

---

[1] Defendants' motion to exceed page limits is also pending. (ECF No. 99). That unopposed motion will be granted. Defendants' motion requesting a hearing on the parties' cross-motions for summary judgment will be denied. (ECF No. 105).

will be seen, in this long, winding, and contentious family dispute, the pending motions are at times incomplete or confusing and final resolution of this action is not attainable on this record.  The parties will be directed to brief the remaining issues, after which further proceedings can be scheduled.

## I.  Background

The following facts are undisputed unless otherwise noted. This case involves the Buckingham family, their now dissolved limited liability company, Oak Plaza, and its wholly owned subsidiary, Tower Oaks.[2]

Oak Plaza is a Maryland limited liability company established by John D. Buckingham ("Mr. Buckingham"), his wife Elizabeth Buckingham ("Mrs. Buckingham"), and their five children: John Daniel Buckingham, Jr. ("Daniel Buckingham"), Thomas Buckingham, Susan Buckingham, David Buckingham, and Richard Buckingham.  (ECF Nos. 104-3, at 1; 87-1, at 1, 22-23; 104-6, at 1, 22-24; 96-7, at 1, 22-24).  According to Oak Plaza's Operating Agreement (the "Oak Plaza Operating Agreement"), the purpose of Oak Plaza is "to

---

[2] As explained in a prior opinion, the Buckingham family and its various companies have been the subject of several lawsuits in the last decade.  *Oak Plaza, LLC v. Buckingham*, No. 22-cv-231-DKC, 2023 WL 2537661, at *1 n.3 (D.Md. Mar. 16, 2023).  For more complete discussions of Oak Plaza, Tower Oaks, and the Buckingham family, see *Oak Plaza, LLC v. Buckingham*, No. 22-cv-0231-DKC, 2022 WL 1591404 (D.Md. May 19, 2022); *Tower Oaks Blvd., LLC v. Procida*, 219 Md.App. 376 (2014); and *121 Assocs. Ltd. P'ship v. Tower Oaks Blvd., LLC*, Nos. 0906 and 1454, 2015 WL 7076013 (Md.App.Ct. Nov. 12, 2015).

acquire and hold all outstanding membership interests in [Tower Oaks]" and through Tower Oaks, manage a parcel of land located in Rockville, Maryland (the "Tower Oaks Building"). (ECF Nos. 104-6, at 5-6; 87-1, at 5-6; 96-7, at 5-6). As a result of a 2007 amendment to the Oak Plaza Operating Agreement, Oak Plaza's members consisted of Daniel Buckingham, Thomas Buckingham, David Buckingham, Richard Buckingham, Susan Buckingham, and Mr. Buckingham. (ECF No. 104-7, at 7). The Oak Plaza Operating Agreement designated Mr. Buckingham as the initial manager until his death or resignation, after which Mrs. Buckingham, Thomas Buckingham, and Daniel Buckingham will become joint managers. (ECF Nos. 104-6, at 13; 87-1, at 13; 96-7, at 13). Oak Plaza's manager has "full, exclusive, and complete discretion, power, and authority, subject to the requirements of applicable law, to manage, control, administer, and operate the business and affairs of [Oak Plaza.]" (ECF Nos. 104-6, at 13; 87-1, at 13; 96-7, at 13).

Tower Oaks' sole member is Oak Plaza. (ECF No. 104-4, at 46). Tower Oaks' Operating Agreement (the "Tower Oaks Operating Agreement"), as amended, designated Mr. Buckingham as the manager of Tower Oaks. (*Id.* at 39). The Tower Oaks Operating Agreement required that all "major decisions" of Tower Oaks—including decisions related to its "property and . . . assets"—must be approved by Oak Plaza. (*See* ECF Nos. 104-4, at 28-29; 104-5, at

3

3-4; 83-1, at 3-4).  Otherwise, Tower Oaks' manager "shall have complete and exclusive control of the management of [Tower Oaks'] business and affairs[.]"  (ECF No. 104-4, at 28; 104-5, at 3; 83-1, at 3).

On April 8, 2009, Mr. Buckingham was determined legally incompetent as a result of severe dementia.  (ECF No. 83-6 ¶¶ 5-10).  Mrs. Buckingham and David Buckingham were appointed temporary co-guardians of Mr. Buckingham pursuant to an October 2010 temporary guardianship order, (ECF No. 83-7, at 2), which was modified in December 2010 to appoint David Buckingham the temporary guardian of Mr. Buckingham's property responsible for managing Mr. Buckingham's financial affairs, (ECF No. 87-5, at 2).  In December 2011, Mrs. Buckingham passed away.  (ECF No. 93-4 ¶ 11).

On October 17, 2012, Mr. Buckingham passed away.  (*Id.* ¶ 42).  Thomas Buckingham ceased to be a member of Oak Plaza after he declared bankruptcy in 2012, 2015, and 2016.  (ECF Nos. 96-4, at 4; 104-3, at 4).

On September 10, 2012, Tower Oaks sued several defendants—including a company named Ronald Cohen Investments—in the Circuit Court for Montgomery County (the "Circuit Court").  *See* Docket, *Tower Oaks Blvd., LLC v. Ronald Cohen Invs., Inc. et al.*, No. 368256V (Circuit Court for Montgomery County) (the "*Cohen Litigation*"); (ECF No. 86-8, at 27).  Between approximately October 2016 through May 2021, Tower Oaks was represented by Mr. McNutt in

the *Cohen* Litigation, which was brought by David Buckingham with the support of Susan and Richard Buckingham. (*See* ECF Nos. 84-3, at 1; 93-4 ¶¶ 40, 63, 67; 93-3 ¶ 8). On May 23, 2014, the Cohen Litigation resulted in a multi-million-dollar judgment (the "*Cohen Litigation Judgment*") in Tower Oaks' favor. (ECF Nos. 96-5 at 5; 104-4, at 5).

In late 2015, Richard Buckingham, as Tower Oaks' purported manager, executed three assignments of the *Cohen* Litigation Judgment (the "2015 Assignments") to Susan Buckingham as Trustee of the Cardinal Trust, David Buckingham, and Richard Buckingham. (*See* ECF Nos. 96-5, at 49-54; 85-4). On approximately February 14, 2017, the Siblings, as purported managers of Tower Oaks, signed an "Agreement to Escrow Funds[,]" with Mr. McNutt serving as the escrow agent. (ECF Nos. 93-3 ¶¶ 53, 92; 96-5, at 6, 55-56; 104-4, at 6, 55-56). On March 6, 2017, Mr. McNutt picked up a check containing funds partially satisfying the judgment in the *Cohen* Litigation (the "Funds") from the Circuit Court's Court Registry made payable to Tower Oaks and later deposited the check in a bank account (the "Bank Account") in Tower Oaks' name at Access National Bank in Virginia. (ECF Nos. 96-5 at 6; 104-4, at 6). At the Siblings' direction, Mr. McNutt disbursed the Funds to the Siblings on three separate dates: March 14, 2017, April 16, 2018, and January 16, 2019. (*See* ECF Nos. 93-3 ¶ 91; 104-13, at 16, 21,

31).   Mr. McNutt also disbursed the Funds to himself and his law firm.  (ECF No. 96-5, at 6-7).

On March 29, 2017, Thomas and Daniel Buckingham filed a complaint in the Circuit Court seeking the dissolution of Oak Plaza (the "Dissolution Case").  *See* Docket, *Buckingham v. Oak Plaza, LLC*, No. 431544V (Circuit Court for Montgomery County); (ECF Nos. 86-9, at 7; 85-7).   On September 21, 2017, Thomas and Daniel Buckingham filed an amended complaint.  *See* Docket, *Buckingham v. Oak Plaza, LLC*, No. 431544V (Circuit Court for Montgomery County); (ECF Nos. 86-9, at 9-10; 86-1).  On September 20, 2018, the Circuit Court issued an opinion and order dissolving Oak Plaza.  (ECF Nos. 96-4; 104-3).  On November 21, 2018, the Circuit Court appointed Samuel Williamowsky ("Mr. Williamowsky") as an auditor "to determine if there are any assets to be wound up and whether or not [Tower Oaks] has any assets which are properly under the jurisdiction of the Court."  (ECF Nos. 96-10, at 1; 104-9, at 1). On June 26, 2020, Mr. Williamowsky filed his audit report (the "Audit Report"), which determined that "the only asset of Oak Plaza . . . was its unliquidated interest in its wholly owned subsidiary, Tower Oaks . . ., and potential direct and derivative causes of action to recover . . . funds received and paid out by [Tower Oaks.]"  (ECF Nos. 96-5, at 4; 104-4, at 4).  The Audit Report also concluded that, based on the disbursement of the Funds between 2015 and 2019, Oak Plaza and Tower Oaks may have causes of action

against Mr. McNutt as well as Richard, David, and Susan Buckingham (individually and as trustee of the Cardinal Trust, which purportedly received disbursements of the Funds on Susan Buckingham's behalf).  (ECF Nos. 96-5, at 7; 104-4, at 7).

The Circuit Court then appointed Keith J. Rosa ("Mr. Rosa") to be "Receiver of Oak Plaza." (ECF No. 1-6, at 36).  This appointment gave Mr. Rosa "full authority to wind up the affairs of Oak Plaza," "including but not limited to powers to issue subpoenas, retain experts, investigate and compromise claims . . ., [and] institute litigation." (ECF No. 1-6, at 36).  On November 19, 2021, Mr. Rosa—acting as Oak Plaza's Receiver— filed a complaint against Richard, David, and Susan Buckingham, Cardinal Trust, and Mr. McNutt in the Circuit Court for Montgomery County (the "Complaint").  (ECF No. 2, at 1).  The claims separately address the 2015 Assignments and the Funds' disbursement.  (ECF No. 2, at 13, 15, 19, 21, 24, 27, 30, 32). There are ten counts.  Counts I (unjust enrichment against all Defendants) and II (legal malpractice against Mr. McNutt) raise claims based on both the 2015 Assignments and the Funds' disbursement.  Counts III (fraudulent concealment against the Siblings), IV (conspiracy to commit fraudulent concealment against all Defendants), VII (constructive fraud against the Siblings), and VIII (aiding and abetting constructive fraud against all Defendants) are based solely on allegations relating to the 2015

Assignments.    Counts  V  (fraudulent  concealment  against  the
Siblings), VI (conspiracy to commit fraudulent concealment against
all Defendants), IX (constructive fraud against the Siblings), and
X (aiding and abetting constructive fraud against Mr. McNutt) are
based solely on allegations relating to the Funds' disbursements.

On January 31, 2022, Mr. McNutt removed the case to this
court.  (ECF No. 1).  On March 16, the court dismissed Counts III,
IV, VII, VIII, and the parts of Counts I and II relating to the
2015 Assignments.  (ECF Nos. 53; 54). On June 29, 2023, Defendants
filed a joint motion for summary judgment.  (ECF No. 82).  On July
25, 2023, Defendants filed an amended consolidated memorandum in
support of their joint motion for summary judgment.[3]  (ECF No. 93).
On August 10, 2023, Plaintiff filed an opposition to Defendants'
joint motion for summary judgment and cross-motion for summary
judgment.  (ECF No. 96).  On September 11, 2023, Defendants filed
a  consolidated  memorandum  in  opposition  to  Plaintiff's  cross-
motion  for  summary  judgment  and  Plaintiff's  opposition  to
Defendant's joint motion for summary judgment.  (ECF No. 97).  On
October 6, 2023, Plaintiff replied.  (ECF No. 104).

---

[3] Defendants' amended consolidated memorandum in support of
their joint motion for summary judgment contains an illegible
portion with overlapping text and perhaps missing paragraphs. (*See*
ECF No. 93, at 37).

## II.  Standard of Review

A court may enter summary judgment only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Interprofession du Gruyere v. U.S. Dairy Exp. Council*, 61 F.4th 407, 415 (4th Cir. 2023) (internal quotation marks omitted) (quoting *Liberty Lobby*, 477 U.S. at 248).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment[.]"  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).  The court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th

Cir. 2011).  The court must deny both motions if it finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A Charles A. Wright, et al., *Federal Practice & Procedure* § 2720 (3$^\text{d}$ ed. 1998).

### III. Summary Judgment

Defendants advance various arguments urging the court to grant summary judgment in their favor both with respect to the entire complaint and as to some specific claims.  Defendants assert that all of Plaintiff's claims necessarily fail because (1) the Siblings are managers of Oak Plaza and Tower Oaks; (2) they are time-barred; and (3) the Dissolution Case is not binding on Defendants.  (ECF No. 93).  In addition, Defendants contend that the undisputed evidence does not support Plaintiff's claims in Counts I, II, V, VI, IX, and X.  (ECF Nos. 93; 97).  On the other hand, Plaintiff counters that (1) the Siblings are not managers of Oak Plaza and Tower Oaks; (2) its claims are not time-barred; and (3) the Dissolution Case is binding on Defendants.  (ECF Nos. 96-1; 104-1).  Furthermore, Plaintiff argues that the undisputed evidence demonstrates that it is entitled to summary judgment in

its favor on Counts I, II, V, VI, IX, and X.  (ECF Nos. 96-1; 104-1).

**A. Arguments with Respect to the Entire Complaint**

**1. Management Authority over Oak Plaza and Tower Oaks**

All of Plaintiff's claims rest on the assertion that Defendants needed to obtain Daniel Buckingham's approval before taking the Funds because only Oak Plaza, through its manager Daniel Buckingham, had the authority to act on behalf of Tower Oaks.  In response, Defendants argue that obtaining Daniel Buckingham's approval was not necessary because (1) the Siblings have been appointed managers of Oak Plaza and Tower Oaks; (2) the doctrines of waiver and estoppel-and alternatively, ratification-establish the Siblings' managerial authority over Oak Plaza and Tower Oaks; and (3) the Circuit Court in the *Cohen* Litigation determined that the Siblings had the authority to act on behalf of Tower Oaks. (ECF No. 93 ¶¶ 139-93).

First, Defendants argue that the Siblings have been appointed managers of Tower Oaks and Oak Plaza on the basis of three actions. (*See id.* ¶¶ 139-169).  On September 21, 2012, David Buckingham emailed Richard and Susan Buckingham stating that although Mr. Buckingham is currently Tower Oaks' manager, "[u]pon his resignation or death, each of you and I will become the Manager [of Tower Oaks]."  (ECF No. 84-2; *see* ECF No. 93-4 ¶¶ 29-30). Defendants contend that "[t]he Tower Oaks Operating Agreement was

11

amended by the [September 21, 2012] email and therefore the appointments are effective as an amendment to the Tower Oaks Operating Agreement."  (ECF No. 93 ¶ 159).  In August 2013, the Siblings signed an "action by the members of Oak Plaza" ratifying an August 2012 "Second Amendment" to the Oak Plaza Operating Agreement appointing themselves as managers of Oak Plaza upon Mr. Buckingham's death or resignation.  (*See* ECF No. 88-1, at 2, 5).  At a July 2015 meeting, Daniel Buckingham executed certified resolutions (the "Certified Resolutions") ratifying the appointments he made-"as Guardian of [Mr.] Buckingham" and "Manager of Oak Plaza"-in the September 21, 2012 email as well as the appointments made in the August 2013 action.  (ECF Nos. 93-4 ¶ 82; 85-10, at 12).  Plaintiff counters that the Appellate Court of Maryland has already confirmed that Daniel and Thomas Buckingham became Oak Plaza's managers upon Mr. Buckingham's death.  (ECF No. 96 ¶¶ 70, 73) (citing *Procida*, 219 Md.App. at 404).

According to the Maryland Limited Liability Act, "*unless otherwise agreed* . . . [d]ecisions concerning the affairs of the limited liability company shall require the consent of members holding at least a majority of the interests in profits of the limited liability company[.]"[4]  Md. Code Ann., Corps. & Ass'ns §§

---

[4] Plaintiff misrepresents the language of Md. Code Ann., Corps. & Ass'ns §§ 4A-403 (b)(2).  *Compare id.*, *and* (ECF No. 97-6, at 2), *with* (ECF No. 96-1 ¶ 76).

4A-403 (a), (b)(2) (emphasis added); (ECF No. 97-6, at 2) (emphasis added).  The Oak Plaza Operating Agreement provides that amendments are not determined by members possessing majority interest.  Rather, the Oak Plaza Operating Agreement states that it "may not be amended without the written consent of *all the Members*, and if any amendment shall limit or detract from the power or authority of the Manager, also with the written consent of the *Manager*."  (ECF No. 87-1, at 21; 96-7, at 21; 104-6, at 21) (emphasis added).  As explained in *Procida*, 219 Md.App. at 403-04; (ECF No. 87-2, at 17),

> Thomas and Daniel—two Members—did not consent to the [August 2012] [S]econd [A]mendment [to the Oak Plaza Operating Agreement].  For that reason, [the August 2012 Second Amendment to the Oak Plaza Operating Agreement] was not valid or effective [under the controlling terms of the Oak Plaza Operating Agreement].
>
> Upon [Mr. Buckingham]'s death on October 17, 2012, the succession provision in the Oak Plaza Operating Agreement was triggered and (because [Mrs. Buckingham] no longer was alive) Thomas and Daniel [Buckingham] became [Oak Plaza]'s Manager, jointly, with the "full, exclusive, and complete discretion, power, and authority, subject to the requirements of applicable law, to manage, control, administer, and operate the business and affairs" of the company, and "to make all decisions affecting such business and affairs."[5]

---

[5] The Audit Report came to the same conclusion as the *Procida* court: "Upon [Mr. Buckingham]'s death on October 17, 2012, Thomas and Daniel became the Managers of Oak Plaza."  (ECF No. 104-4, at 3).

Defendants argue that "[w]hile the *Procida* court stated that David[] [Buckingham's] attempts to modify the [Oak Plaza] Operating Agreement, related to management authority, were not permitted or effective, the [c]ourt did not suggest that the lack of authority determined in the time frame of January[] 2013 extended beyond that date." (ECF No. 97 ¶ 43). Defendants, however, have not provided evidence showing that Daniel Buckingham-as Oak Plaza's sole manager after Thomas Buckingham's bankruptcy disqualified him from membership-consented to appointing the Siblings as managers of Oak Plaza. Because the Siblings' August 2013 and July 2015 ratifications of the Siblings' appointments as managers of Oak Plaza undermined Daniel Buckingham's managerial authority, the Siblings were required to obtain unanimous consent from all Oak Plaza members-especially Daniel Buckingham.[6]   The Siblings did not obtain Daniel

---

[6] In his supplemental declaration, David Buckingham contends that under the Oak Plaza Operating Agreement's power of attorney provision, the August 2012 "Second Amendment" to the Oak Plaza Operating Agreement was valid. (*See* ECF No. 97-8 ¶ 11). David Buckingham also asserts that "the [Appellate Court of Maryland] ruled that [his] authority under the guardianship orders to act as Manager of Oak Plaza ended at the death of [Mr. Buckingham in October 2012] and therefore [his] actions as Manager prior to his death were authorized." (*Id.* ¶ 13). David Buckingham misrepresents *Procida*'s holding. As explained in *Procida*, the August 2012 "Second Amendment" to the Oak Plaza Operating Agreement "was not valid or effective[]" because the power of attorney provision "does not grant [Oak Plaza's] Manager the power to amend the [Oak Plaza] Operating Agreement[]"-regardless of the fact that the August 2012 "Second Amendment" took place prior to Mr. Buckingham's death. *See Procida*, 219 Md.App. at 403-04.

Buckingham's consent.  Hence, the Siblings' August 2013 and July 2015 appointments of themselves as Oak Plaza's managers are invalid.

The Tower Oaks Operating Agreement states that it "may only be amended by a written instrument which evidences the approval of a majority of all of the Membership Interests owned by the Members."  (ECF Nos. 104-4, at 36; 104-5, at 11; 83-1, at 11).  Moreover, "[i]n the event of the resignation, removal or termination for any reason whatsoever of the Manager (or one of them) of [Tower Oaks], the written consent of Members owning at least a majority of the total Membership interests shall be required to designate a new Manager."  (ECF Nos. 104-4, at 28; 104-5, at 3; 83-1, at 3).  In other words, as Tower Oaks' sole member, Oak Plaza-via its manager-is responsible for amendments to the Tower Oaks Operating Agreement and designating Tower Oaks' manager.  The September 21, 2012 email is not a valid amendment to the Tower Oaks Operating Agreement because it occurred without the consent of Mr. Buckingham, who was still alive at the time as Tower Oaks and Oak Plaza's manager.  The reaffirmation of the September 21, 2012 email at the Siblings' July 2015 meeting is also invalid because the Siblings did not obtain the consent of Daniel Buckingham-who was not in attendance-after he succeeded Mr. Buckingham as Oak Plaza's manager.  As observed in the Auditor Report, "[t]here is no evidence" that Daniel Buckingham appointed

15

a new manager of Tower Oaks after Mr. Buckingham's death.  (ECF Nos. 104-4, at 3; 96-5, at 3).  Therefore, as non-managing members of Tower Oaks, the Siblings had no authority-actual or otherwise-to act on behalf of Tower Oaks.[7]

Second, Defendants argue that Daniel Buckingham has waived-and is estopped from asserting-his managerial authority over Oak Plaza and Tower Oaks because he did not challenge the Siblings' actions as purported managers of Oak Plaza and Tower Oaks.  (ECF No. 93 ¶¶ 170-178).  Specifically, Defendants contend that "both waiver and estoppel apply" because Daniel Buckingham's failure to fulfill his managerial duties "have caused the Defendants to spend substantial amounts of time and money . . . to attempt to preserve an asset that Dan . . . clearly abandoned."  (*Id.* ¶ 177).[8]  The Supreme Court of Maryland has explained that

---

[7] In his supplemental declaration, David Buckingham states that he believed that Daniel Buckingham had been removed as a manager of Oak Plaza as a result of a July 2015 estoppel certificate stating that Daniel Buckingham was no longer a member of Oak Plaza.  (ECF No. 97-8 ¶ 24; *see* ECF Nos. 85-5, at 2, 11; 88-4, at 2, 11; 88-3, at 2).  The Circuit Court has held that the estoppel certificate is insufficient to divest Daniel Buckingham of his membership.  (ECF Nos. 96-4, at 8; 104-3, at 8).

[8] Plaintiff responds that waiver and estoppel do not apply because Thomas and Daniel Buckingham "entrusted" David Buckingham to pick the legal team for the *Cohen* Litigation.  (ECF No. 96-1 ¶¶ 79, 84; *see also* ECF No. 104-1 ¶ 44).  In support, Plaintiff solely relies on Exhibit 36, (ECF No. 86-6) to Plaintiff's motion for summary judgment, which has been withdrawn, (*see* ECF No. 92), and replaced by a new exhibit that is unrelated to the issue of entrustment, (ECF No. 91-2).  The court will not consider the

> [a] waiver is the intentional relinquishment
> of a known right, or such conduct as warrants
> an inference of the relinquishment of such
> right, and may result from an express
> agreement or be inferred from circumstances.
> ["A]cts relied upon as constituting a waiver
> of the provisions["] of a contract must be
> inconsistent with an intention to insist upon
> enforcing such provisions. *Canaras v. Lift
> Truck Services, Inc.*, 272 Md. 337, 360 (1974);
> *Food Fair Stores, Inc. v. Blumberg*, 234 Md.
> 521, 531 (1964). . . . ["]A waiver may be
> either verbal or in writing; and it is not
> necessary that the waiver should be direct and
> positive.  It may result from implication and
> usage, or from any *understanding between the
> parties* which is of a character to satisfy the
> mind that a waiver is intended.  The assent
> must, however, be *clearly established* and *will
> not be inferred from doubtful or equivocal
> acts or language*.["] 272 Md. at 360-61
> (emphasis added).

*BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 643-44
(1975) (emphasis added).  Accordingly, waiver "require[s] *mutual
knowledge and acceptance*[.]"  *Hovnanian Land Inv. Grp., LLC v.
Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 120 (2011)
(emphasis added).  Waiver and estoppel are related but nevertheless
distinguishable doctrines:

> Waiver is the voluntary surrender of a right;
> estoppel is the inhibition to assert it from
> the mischief that has followed.  Waiver
> involves both knowledge and intention;
> estoppel may arise where there is no intent to
> mislead.  Waiver depends upon what one himself
> intends to do; estoppel depends rather upon
> what he causes his adversary to do.  Waiver
> involves the acts and conduct of only one of

---

withdrawn Exhibit 36, (ECF No. 86-6), or any references to it in
the papers.

> the parties; estoppel involves the conduct of
> both.  A waiver does not necessarily imply
> that one has been misled to his prejudice or
> into an altered position; an estoppel always
> involves this element.  Estoppel may carry the
> implication of fraud, waiver does not.  A
> waiver may be created by acts, conduct or
> declarations insufficient to create a
> technical estoppel.

*Benson v. Borden*, 174 Md. 202, 219 (1938).

Here, Defendants have not shown that there was a *mutual understanding* between Daniel Buckingham and the Siblings that Daniel Buckingham has *unequivocally* waived his managerial right over Oak Plaza and Tower Oaks.  Indeed, Daniel Buckingham declined to attend the Siblings' July 2015 meeting.  Defendants also argue that Plaintiff "fails to provide a single instance in which [Daniel Buckingham] exercised management authority, or even interest in, the Cohen Litigation after 2014[,]" and "[Daniel Buckingham] . . . failed to preserve the existence of Oak Plaza and Tower Oaks by failing to file . . . the LLCs['] annual reports or personal property tax returns . . . at any time after [Mr. Buckingham's death]."  (ECF No. 97 ¶¶ 31, 33).  Failure to attend a meeting, a lack of diligence in fulfilling managerial duties, and disinterest in pursuing certain litigation, however, do not necessarily manifest a clear intent wholly to relinquish a managerial right.  Nor do Defendants contend, much less show, that they have been *misled* into assuming managerial positions over Oak Plaza and Tower Oaks.  Hence, neither waiver nor estoppel foreclose Daniel

Buckingham from asserting managerial authority over Oak Plaza and Tower Oaks.

Alternatively, Defendants contend that Oak Plaza has ratified the Siblings' actions in the *Cohen* Litigation and as a result, the Siblings became the managers of Oak Plaza and Tower Oaks given that "[Daniel Buckingham] . . . took no action or interest [in the *Cohen* Litigation] from 2014 through September[] 2017 and provided no management, instruction, or comment on the . . . Funds until February[] 2018." (*See* ECF No. 97 ¶¶ 45-49).

The Maryland Limited Liability Act provides that "each member of the [limited liability] company is an agent of the company for the purpose of its business, unless the articles of organization or operating agreement provide otherwise." *Procida*, 219 Md.App. at 406-07 (citing Md. Code Ann., Corps. & Ass'ns § 4A-401(a)). According to the Oak Plaza Operating Agreement, "no Member is an agent of the company and no Member has authority to act for the company solely because he or she is a Member."[9] (ECF No. 87-1, at 15; 96-7, at 15; 104-6, at 15). Regardless, unauthorized acts by an Oak Plaza member can be later cured via ratification by Daniel Buckingham. Ratification requires "knowledge of all the material

---

[9] As a result, the clear language in the Oak Plaza Operating Agreement refutes Defendants' argument that the Siblings had "apparent authority" such that they were acting "with[in] the scope of [their] usual employment, or [were] held out to the public . . . as having competent authority[.]" (ECF No. 97 ¶ 56) (citing *Proctor v. Metro Money Store*, 579 F.Supp.2d 724 (D.Md. 2008)).

facts concerning the act being ratified . . . at the time of ratification." *Procida*, 219 Md.App. at 405 (citing *Linden Homes, Inc. v. Larkin*, 231 Md. 566, 570 (1963); *Tricat Indus., Inc. v. Harper*, 131 Md.App. 89 (2000); *Yost v. Early*, 87 Md.App. 364, 382 (1991)). "An inference that the principal had knowledge may be drawn from the existence of such information as would put a person of ordinary intelligence on notice of the material facts of the transaction being ratified." *Id.* at 406 (citing *Bakery and Confectionery Union and Industry Int'l Pension Fund v. New World Pasta Co.*, 309 F.Supp.2d 716, 729–30 (D.Md. 2004)). "Ratification of an unauthorized act . . . may be implied from words, acts, or conduct on the part of the principal that reasonably indicate a desire to affirm the unauthorized act." *Id.* (citing *In re Uwimana*, 274 F.3d 806, 812-13 (4th Cir. 2001) (applying Maryland law), *abrogated on different grounds by Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013); *Progressive Cas. Ins. Co. v. Ehrhardt*, 69 Md.App. 431, 442 (1986); 19 C.J.S. Corporations § 709). A principal may ratify an act "by accepting and retaining its benefits[] or by failing to timely disavow or repudiate it[.]" *Id.* (first citing *Citizens Bank of Maryland v. Maryland Indus. Finishing Co., Inc.*, 338 Md. 448, 463–64 n.9 (1995); and then citing *Proctor*, 579 F.Supp.2d 724 (applying Maryland law)); *see also* 19 C.J.S. Corporations § 698 ("Ratification will not be implied from silence or a failure to repudiate without knowledge

20

of the facts.   However, ratification of a corporate officer's unauthorized acts may be inferred from silence and inaction, where the corporation has full knowledge of the unauthorized act.").

The undisputed evidence shows that, despite refusing to fund or participate in the preparation of the *Cohen* Litigation, Daniel Buckingham was keenly aware that the Siblings were spearheading the *Cohen* Litigation on behalf of Tower Oaks.   The Siblings had multiple discussions with Daniel Buckingham regarding the possibility that he would help them financially support the *Cohen* Litigation, one of which took place in August 2014 after the *Cohen* Litigation's May 2014 judgment.   (*See* ECF Nos. 82-6 ¶ 15; 93-4 ¶¶ 68, 92; 82-4 ¶¶ 63-65).   Along with the Siblings, Daniel Buckingham attended an August 2014 sheriff's sale to satisfy the *Cohen* Litigation's judgment.   (ECF No. 82-4 ¶ 66).   Daniel Buckingham also offered some financial support to the Siblings at a May 2015 sheriff's sale to satisfy the *Cohen* Litigation's judgment.   (ECF No. 93-4 ¶ 59).   At each instance, Daniel Buckingham did not object to the Siblings' management of the *Cohen* Litigation.   Rather, Daniel Buckingham accepted the Siblings' efforts in the *Cohen* Litigation on behalf of Tower Oaks-ratifying the Siblings' authority as Tower Oaks' agents in the *Cohen* Litigation as a result.   Nevertheless, authority to manage the *Cohen* Litigation as Tower Oaks' agent is not equivalent to management authority over Oak Plaza and Tower Oaks.   Daniel Buckingham's actions in accepting

the benefit of the Siblings' management of the *Cohen* Litigation do not reasonably indicate that he *knew*, *prior to ratification*, that he was also ceding management authority over Tower Oaks such that the Siblings were permitted to take the Funds belonging to Tower Oaks. *See Adams' Exp. Co. v. Trego*, 35 Md. 47, 66 (1872) (holding that a "broad and comprehensive" interpretation of an agent's power to supervise a principal's business still excludes the power to license other employees to carry on a competing business because it would "[not] be rational to presume that it was the intention of the principal to clothe the agent with authority to contract in a manner to inflict serious injury on its business[,]" and "it is a universal principle in the law of agency, that the powers of the agent are to be exercised for the benefit of the principal *only, and not of the agent or of third parties*[]")*.* Without such material knowledge, Daniel Buckingham cannot have ratified the Siblings' purported management authority over Tower Oaks. In fact, on February 22, 2018, after becoming aware of the possibility that the Siblings took the Funds, Daniel Buckingham-asserting his authority as Oak Plaza's manager-moved jointly with Thomas Buckingham to enjoin Oak Plaza and its members from spending the Funds. (*See* ECF No. 86-2). Daniel Buckingham's conduct cannot support an inference of an intent to ratify the Siblings' purported management authority over Tower Oaks.

Third, Defendants argue that the Siblings are managers of Tower Oaks because the Circuit Court in the *Cohen* Litigation determined that David Buckingham had the authority to act on behalf of Tower Oaks. (ECF No. 93 ¶¶ 179-193). Indeed, the *Cohen* Litigation defendants filed an April 29, 2013 motion to dismiss and a July 13, 2013 motion for summary judgment arguing that David Buckingham did not have authority to act on behalf of Tower Oaks, (ECF Nos. 84-3, at 1; 84-5, at 1-2)-both of which were denied by the Circuit Court, (ECF Nos. 84-4; 84-6). A December 27, 2013 motion for summary judgment advanced a similar argument, (ECF No. 84-8, at 40), and was partially granted, (ECF No. 84-9). Plaintiff argues, however, that the Circuit Court "d[id] not make any findings regarding David Buckingham's authority to act on behalf of Tower Oaks[,]" but even if it did, it did not determine "whether David Buckingham was a manager of either Tower Oaks . . . or Oak Plaza[.]" (ECF No. 96-1 ¶¶ 92-93). Defendants do not respond to Plaintiff's argument. By failing to respond, Plaintiff has conceded the point. *See Mentch v. Eastern Sav. Bank FSB.*, 949 F.Supp. 1236, 1247 (D.Md. 1997) (dismissing a plaintiff's claim as "abandoned" because she did not raise it in her opposition to defendant's motion for summary judgment); *Mincey v. State Farm Ins. Co.*, 672 F.Supp.3d 59, 62 (D.Md. 2023) ("[A] plaintiff who fails to respond to an argument raised in a dispositive motion is deemed to have abandoned the claim.").

**2. Statute of Limitations**

The parties agree that Maryland's three-year statute of limitations for civil claims, Md. Code Ann., Cts. & Jud.Proc. § 5-101, governs the claims asserted in Counts I, II, V, VI, IX, and X of the Complaint. (*See* ECF Nos. 93 ¶ 114; 96-1 ¶ 44, 60-61). The parties, however, disagree on the date on which Plaintiff's causes of action accrued. Maryland has adopted the discovery rule, which provides that a limitations period does not begin to run until "a [plaintiff] gains knowledge sufficient to put her on inquiry." *O'Hara v. Kovens*, 305 Md. 280, 289 (1986) (quoting *Lutheran Hosp. of Maryland v. Levy*, 60 Md.App. 227, 237 (1984)). In other words, "a cause of action accrues when (1) it comes into existence, . . . and (2) the claimant *acquires knowledge* sufficient to make inquiry, and a reasonable inquiry would have disclosed the existence of the allegedly negligent act and harm." *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 447 (2000) (emphasis added) (quoting *Edwards v. Demedis*, 118 Md.App. 541, 566 (1997)). "[A] cause of action does not accrue until all elements are present, including damages, however trivial." *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 177 (1997) (citing *Mattingly v. Hopkins*, 254 Md. 88, 95 (1969); *Baker, Watts & Co. v. Miles & Stockbridge*, 95 Md.App. 145, 187 (1993); *American Home Assurance v. Osbourn*, 47 Md.App. 73, 86 (1980)). "[A] plaintiff has inquiry notice when it does something that gives it a reason to investigate

24

public records, and those records would reveal the defendant's alleged wrongs." *Buckingham*, 2023 WL 2537661, at *13; *see, e.g.,* *Cain v. Midland Funding, LLC*, 475 Md. 4, 31 (2021) (holding that a debtor's claim against an unlicensed collection agency accrued when the debtor submitted her payment because it gave her a reason to investigate the agency's license statute, and she "had the ability to ascertain, through due diligence and based upon matters of public record, whether [the agency] was licensed at the time[]").

Where a plaintiff is a limited liability corporation, accrual occurs when its agent acquires the knowledge necessary to put the agent on inquiry notice. *See Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 773 (4th Cir. 1995) (applying Maryland law). Here, Daniel Buckingham (at any time) and Thomas Buckingham (prior to declaring bankruptcy and losing his membership status) are Oak Plaza's agents by virtue of being Oak Plaza's managing members. *See Plank v. Cherneski*, 469 Md. 548, 572 (2020) ("Despite the statutory silence concerning fiduciary duties in the LLC Act, '[m]anaging members are clearly *agents* for the LLC and each of the members, which is a fiduciary position under common law.'" (quoting *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md.App. 586, 616 (2011))); (ECF No. 87-1, at 15) (stating in

the Oak Plaza Operating Agreement that non-managing members are not agents of Oak Plaza).

Defendants argue that Daniel Buckingham was on notice when Mr. McNutt initially obtained the Funds from the Circuit Court's registry on March 6, 2017 and failed to conduct reasonable diligence that would have revealed the location of the Funds and their disbursement. (*See* ECF No. 93 ¶¶ 131-32). Alternatively, Defendants contend that "[Daniel Buckingham] was on inquiry notice, **no later than February 22, 2018,**" because Daniel Buckingham believed that the Siblings likely possessed the Funds on that date. (*Id.* ¶ 133) (emphasis in original) (citing ECF No. 86-3 ¶¶ 6, 10). Plaintiff counters that the limitations period did not begin to run until the June 26, 2020 Audit Report revealed the Funds' disbursements. (*See* ECF No. 96-1 ¶ 65).

As the court explained in a prior opinion,

> the 2017 dissolution suit gave Daniel Buckingham reason to investigate Oak Plaza's assets and put him on inquiry notice of any relevant information he "had the ability to ascertain, through due diligence and based upon matters of public record[.]" . . . Had Daniel [Buckingham] conducted a reasonable investigation in 2017, he may have found that the [C]ircuit [C]ourt had released the money from its registry, but it is unclear how he could have found the Defendants' private contract or their newly created bank account. Nor did he have a way to discover the

> disbursements themselves—one of which did not
> occur until 2019 anyway.

*Buckingham*, 2023 WL 2537661, at *13.  Here, Defendants have not

supplied   any   evidence   demonstrating   that   a   reasonable

investigation prior to the Audit Report would uncover the full

extent of Defendants' actions with respect to the Funds-all of

which, apart from the Funds' withdrawal and the 2015 Assignments,

were not discoverable via public records.[10]  Instead, Defendants

argue that the running of the limitations period is not contingent

on the dates of the individual disbursements because Mr. McNutt's

March 6, 2017 withdrawal of the Funds marks the date of the first

"trivial   injury"   and   is   when   all   damages   are   known-"[t]he

subsequent [disbursements to the Siblings] did not alter the amount

or   nature   of   the   alleged   damages   that   Oak   Plaza   already

sustained[.]"   (ECF No. 97 ¶¶ 18, 21).   Defendants, however,

overlook the fact that Plaintiff's causes of action do not solely

arise from Mr. McNutt's withdrawal of the Funds.   Plaintiff's

causes of action are also predicated on the "Agreement to Escrow

Funds," depositing of the Funds in the Bank Account unknown to

Daniel Buckingham, and subsequent disbursements of the Funds, (*see*

ECF No. 2)-all of which must have occurred, and be discoverable,

before the limitations period can accrue.   Thus, the limitations

---

[10] Daniel Buckingham's mere *belief* on February 22, 2018 that the Siblings possessed the Funds is therefore irrelevant to determining notice.  (*See* ECF No. 86-3 ¶ 6).

period began running when the Audit Report was released on June 26, 2020-the first time Daniel Buckingham was able reasonably and fully to ascertain Defendants' actions with respect to the Funds after the final disbursement of the Funds in 2019.[11]

### 3. Whether the Dissolution Case is Binding on Defendants

Defendants argue that the Circuit Court's dissolution of Oak Plaza on September 20, 2018 is not binding on Defendants, (ECF No. 97 ¶ 55) (citing ECF Nos. 85-7; 85-9; 93-3 ¶ 77), and was defective for the following reasons:

> (1) [Thomas Buckingham] had no standing to bring the lawsuit; and (2) none of the Defendants were parties; and (3) the Plaintiffs, [Daniel] and [Thomas Buckingham], claimed to be the managers of Oak Plaza and yet they sued their own company seeking dissolution when they were aware that Oak Plaza had no business and were not entitled to anything except after all expenses of Tower Oaks were paid in full[.]

---

[11] Defendants also argue that Plaintiff's claims against Mr. McNutt are time-barred because Daniel Buckingham (1) was "suspicious" of Mr. McNutt in March 2017; (2) was aware in February 2018 that Mr. McNutt represented the Siblings' interests; and (3) attempted to remove Mr. McNutt as counsel for Oak Plaza and Tower Oaks in April 2018 and May 2018. (ECF No. 97 ¶¶ 23, 25). For the same reason, Defendants' argument fails because a reasonable investigation in 2017 and 2018 would not have revealed the full extent of Mr. McNutt's actions with respect to the Funds-namely, his depositing of the Funds in the Bank Account as well as his disbursements of the Funds from 2017 to 2019-until they were uncovered by the Audit Report. Vague suspicions and even a desire to terminate Mr. McNutt's representation are insufficient to put Daniel Buckingham on notice.

(*Id.*).  Plaintiff  counters  that  "[t]he  Circuit  Court  order dissolving Oak Plaza was not appealed[]" and is therefore "binding on  Oak  Plaza"  and  its  members.  (ECF  No.  104-1  ¶  71).  Plaintiff is  correct.  Defendants'  arguments  amount  to  a  collateral  attack on  the  Circuit  Court's  dissolution  of  Oak  Plaza,  and  this  court does not have the authority to overturn a facially valid order of the state court.

### B. Specific Claims

### 1. Unjust Enrichment (Count I)

In  Count  I,  Plaintiff  alleges  that  all  Defendants  were unjustly enriched by the Funds' disbursements.  (ECF No. 2 ¶¶ 33-48).  Plaintiff  seeks  judgment  on  Count  X  against  (1)  all Defendants, jointly and severally, in the amount of $1,347,450.98, plus interest and costs; (2) Richard Buckingham in the amount of $525,000.00, plus interest and costs; (3) David Buckingham in the amount  of  $817,808.00,  plus  interest  and  costs;  (4)  Susan Buckingham  in  the  amount  of  forty  percent  of  the  Funds  plus $475,626.13, interest, and costs; and (5) Mr. McNutt in the amount of $66,626.53, plus interest and costs.  (*Id.* at 10).

Defendants argue that they should be granted summary judgment on Count I because (1) "Plaintiff cannot show that the Defendants were  .  .  .  unjustly  enriched[;]"  and  (2)  "Plaintiff  cannot  show that it provided a benefit."  (ECF No. 93 ¶¶ 207-08).  Plaintiff

contends that it should be granted summary judgment on Count I because

> [t]he Defendants clearly received a benefit that was intended for the Plaintiff-the [Funds] from the *Cohen* Litigation. The Defendants have retained [the Funds] even though they were not authorized to do so. It would be inequitable to allow the Defendants to continue to retain [the Funds] when it has already been determined that the money belonged to [Tower Oaks'] sole member, Oak Plaza[.]

(ECF No. 96-1 ¶ 109).

A plaintiff bringing an unjust enrichment claim must prove (1) "[a] benefit conferred upon the defendant by the plaintiff;" (2) "[a]n appreciation or knowledge by the defendant of the benefit;" and (3) "[t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151 (2000).

Here, Plaintiff has established that the Funds constitute the alleged benefit in its unjust enrichment claim. "In an action for unjust enrichment the burden is on the plaintiff to establish that the defendant holds plaintiff's money and that it would be unconscionable for him to retain it." *Plitt v. Greenberg*, 242 Md. 359, 364 (1966) (citing *Howard v. United States*, 125 F.2d 986 (5th Cir. 1942); *American Newspaper, Inc. v. United States*, 20 F.Supp. 385 (S.D.N.Y. 1937); *Eatwell v. Beck*, 41 Cal.2d 128 (1953); *Messner*

*v. Union County*, 34 N.J. 233 (1961); *First National Bank at Cody v. Fay*, 80 Wyo. 245 (1959)). "It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner." *Id.* (quoting *Empire Oil Co. v. Lynch*, 106 Ga.App. 42, 43 (1963)). Defendants benefitted from the Funds' disbursements because the Funds belonged to Oak Plaza through Tower Oaks. (*See* ECF Nos. 96-5, at 4; 104-4, at 4).

Defendants maintain that Plaintiff fails to establish the existence of a benefit because "Oak Plaza, [Daniel] and [Thomas Buckingham], made no contribution to the Siblings' attempts to save Tower Oaks[,]" (ECF No. 93 ¶ 208), and "used all of the [Buckingham] family's resources for themselves[,]" while the Siblings "used . . . all their assets . . . trying to preserve . . . the Tower Oaks Building." (ECF No. 97 ¶ 41). Defendants, however, miss the point, as the parties' dispute arises from *the Funds' disbursement*-not Daniel and Thomas Buckingham's lack of contribution to Tower Oaks.

Moreover, Plaintiff has established that Defendants have been unjustly enriched by the Funds. A court's determination of "whether it is inequitable or unjust for the beneficiary to retain the benefit without the payment of its value[]" consists of a "fact-specific balancing of the equities[,]" such as "fault,

ethical position, and delay." *Royal Inv. Grp., LLC v. Wang*, 183 Md.App. 406, 440 (2008) (first quoting *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 301 (2007); and then quoting 1 Dan B. Dobbs, *Law of Remedies* § 2.4(5) (2nd ed. 1993)). "[T]he balancing of equities and hardships looks at the conduct of both parties and the potential hardships that might result from a judicial decision either way." *Id.* (alteration in original) (quoting 1 Dan B. Dobbs, *Law of Remedies* § 2.4(5) (2nd ed. 1993)). The equities weigh heavily in Plaintiff's favor given that Defendants disbursed the Funds as purported managers of Oak Plaza and Tower Oaks without Daniel Buckingham's knowledge, even after the Appellate Court of Maryland held in 2014 that Daniel and Thomas Buckingham-not the Siblings-succeeded Mr. Buckingham as Oak Plaza's managers. *See Procida* 219 Md.App. at 404; (ECF No. 87-2, at 17). Defendants insist that they "are entitled to reimbursement for their expenses, time and out of pocket expenses, including the vast amount of legal fees necessary to prosecute the Cohen I Litigation (and other expenses benefitting Tower Oaks)." (ECF No. 97 ¶ 42). Regardless of whether Defendants *deserve* to be reimbursed for their efforts, they are not *entitled* to the Funds. Only Oak Plaza-through Tower Oaks-is entitled to the Funds. (*See* ECF Nos. 96-5, at 4; 104-4, at 4). Allowing Defendants to circumvent Oak Plaza's entitlement to the Funds simply because they contributed to Tower Oaks would reward inequitable conduct.

As Plaintiff states, "while it is true that the Defendants'
reasonable legal expenses . . . may be recoverable as reimbursable
expenses (with the approval of [Daniel Buckingham]), that alone
does not allow the Defendants to unilaterally decide . . . to give
themselves all [of the Funds]."   (ECF No. 104-1 ¶ 54).
Accordingly, Plaintiff's motion for summary judgment with respect
to Count I against all Defendants will be granted as to liability
and Defendants' cross-motion for summary judgment with respect to
Count I will be denied.[12]

### 2. Fraudulent Concealment and Constructive Fraud (Counts V and IX)

In Counts V and IX, Plaintiff alleges that the Siblings
committed fraudulent concealment and constructive fraud by signing
the "Agreement to Escrow Funds" and disbursing the Funds without
notifying Oak Plaza.  For Count V, the complaint alleges that the
failure to disclose was with the intent to deceive Tower Oaks so
that it would not act to prevent the disbursal of the funds.  (ECF
No. 2 ¶¶ 100-17).  In Count IX, Plaintiff alleges that the failure
to disclose the Agreement or disbursal was contrary to the duty of

---

[12] Defendants also argue that "[t]he *Clean Hands* doctrine
should be used here to assure that [Daniel] and [Thomas
Buckingham], the real parties in interest, have no chance to gain
from their consistent and long[-]standing bad acts[.]"  (ECF No.
93 ¶ 218).  Defendants erroneously conflate Plaintiff with Daniel
and Thomas Buckingham.  As Plaintiff argues, "neither Thomas [n]or
Daniel [Buckingham] are parties to this case[]" because "[t]he
Plaintiff in this case is Oak Plaza, *derivatively and on behalf of
Tower Oaks*[.]"  (ECF No. 96-1 ¶ 110).

the Siblings, based on the confidence placed in them to act in the best interest of Oak Plaza and Tower Oaks, and the failure to disclose had the tendency to deceive Tower Oaks. (ECF No. 2 ¶¶ 170-186.)

Defendants argue that they should be granted summary judgment on Counts V and IX because (1) "Defendants did not violate a legal duty by deception or by violating a confidence [toward Oak Plaza][;]" and (2) Plaintiff has not shown that "Oak Plaza relied on any statements or actions of the [Siblings][.]" (ECF No. 97 ¶¶ 57-60). Plaintiff contends that it should be granted summary judgment on Counts V and IX because (1) the Siblings had a duty to inform Daniel Buckingham about the "Agreement to Escrow Funds" and the Funds' disbursements; and (2) Daniel Buckingham "entrusted" the Siblings to act on behalf of Tower Oaks in the *Cohen* Litigation, therefore justifiably relying on the Siblings to safeguard Tower Oaks' property. (ECF No. 96-1 ¶¶ 154-55, 161).

Fraudulent concealment is "is any statement or other conduct which prevents another from acquiring knowledge of a fact[.]" *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 138 (2007) (quoting *Fegeas v. Sherrill*, 218 Md. 472, 476 (1958)). A fraudulent concealment claim consists of five elements: "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable

34

reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment."[13]  *Id.* (quoting *Green v. H & R Block*, 355 Md. 488, 525 (1999).  "Plaintiff must prove *either* that Defendant had a duty to disclose a material fact to them and failed to do so, or that Defendant concealed a material fact for the purpose of defrauding Plaintiff."  *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 629 (D.Md. 2003) (citing *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 551 (D.Md. 1997)).

 "A defendant commits constructive fraud against a plaintiff where the defendant 'breach[es] a legal or equitable duty' to the plaintiff in a way that 'tend[s] to deceive others, to violate public or private confidence, or to injure public interests.'"  *Thompson v. UBS Fin. Servs., Inc.*, 443 Md. 47, 69 (2015) (alterations in original) (quoting *Canaj, Inc. v. Baker & Div. Phase III, LLC*, 391 Md. 374, 421–22 (2006)).  The duty element of a constructive fraud claim "generally arises in a context of trust or confidence, such as a fiduciary duty or confidential

---

[13] In reciting the elements of a *fraud* claim rather than a *fraudulent concealment* claim, Defendants misrepresent the law applicable to Plaintiff's fraudulent concealment claim. (*See* ECF No. 97 ¶ 57).  Although Defendants argue that "Plaintiff shows no representation relied upon by [Daniel and Thomas Buckingham][,]" a false representation is not an element of a fraudulent concealment claim.  Rather, fraudulent concealment itself is "equivalent to a false representation."  *Rhee v. Highland Dev. Corp.*, 182 Md.App. 516, 525 (2008) (quoting *Stewart v. Wyoming Cattle Ranche Co.*, 128 U.S. 383, 388 (1888)).

relationship." *Chassels v. Krepps*, 235 Md. App. 1, 16 (2017) (citing *Thompson*, 443 Md. at 69). "When such a duty is breached by deceptive conduct, it doesn't matter whether the culpable party had a dishonest purpose or intent to deceive." *Id.* (citing *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216 (1995)). "Mere non-compliance with a legal duty is not necessarily constructive fraud[.]" *Id.* (citing *Walter E. Heller & Co. v. Kocher*, 262 Md. 471 (1971)).

Although not specifically pled by Plaintiff, there may be a related concept at play: "[A] breach of fiduciary duty may be actionable as an independent cause of action." *Plank*, 469 Md. at 598. "To establish a breach of fiduciary duty . . . , a plaintiff must show: '(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Id.* at 599 (quoting *Froelich v. Erickson*, 96 F.Supp.2d 507, 526 (D.Md. 2000)). Hence, "a [defendant] can breach fiduciary duties without committing fraud[,]" especially if the defendant "made no effort to hide" the allegedly wrongful conduct. *Bontempo v. Lare*, 217 Md. App. 81, 131 (2014), *aff'd*, 444 Md. 344 (2015). Bad judgment, without more, does not give rise to fraud because it falls short of an intention to deceive. *Id.*

Here, the record is muddled and unclear as to the applicable law and the facts related to the fraud-related claims. For instance, the parties fail to discuss adequately, with

corresponding citations to the record, (1) whether the Siblings *intended* to deceive Tower Oaks and Oak Plaza; and (2) whether the Siblings' actions had a *tendency to deceive*. The cross-motions for summary judgment with respect to Counts V and IX against the Siblings will be denied.[14]

### 3. Legal Malpractice (Count II)

In Count II, Plaintiff alleges that Mr. McNutt committed legal malpractice because disbursing the Funds without Oak Plaza's authorization constituted a breach of duty to Tower Oaks. (ECF No. 2 ¶¶ 49-65). Plaintiff seeks judgment on Count II against Mr. McNutt in the amount of $66,626.53, plus interests and costs. (*Id.* at 13).

Plaintiff argues that it should be granted summary judgment on Count II because

> [t]here is no dispute that [Mr.] McNutt (1) represented [Tower Oaks], (2) owed a duty to [Tower Oaks] and its sole member, Oak Plaza, (3) violated that duty when he distributed [the] [F]unds . . . to [the Siblings] as well as himself, without permission from the manager of Oak Plaza, and (4) in making those distributions, caused [Tower Oaks and] Oak Plaza . . . to suffer . . . damages[.]

(ECF No. 96-1 ¶ 145). Defendants contend that Mr. McNutt should be granted summary judgment on Count II because Plaintiff fails to

---

[14] As a result, the cross-motions for summary judgment with respect to Counts VI, conspiracy to commit fraudulent concealment against all Defendants, and X, aiding and abetting constructive fraud against Mr. McNutt will also be denied.

establish the representation and duty elements of its legal malpractice claim. (ECF No. 97 ¶ 26). Specifically, Defendants argue that (1) "there is no allegation of a retainer agreement between [Mr.] McNutt and Oak Plaza, and certainly none signed, or recognized by [Daniel] or [Thomas Buckingham][;]" and (2) "Plaintiff['s] assert[ion] that [Mr.] McNutt owed a duty to Oak Plaza and . . . violated that duty when he distributed funds 'without permission from the manager of Oak Plaza[]' . . . is without merit[.]" (*Id.*).

A plaintiff bringing a legal malpractice claim must prove "(1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty." *Suder v. Whiteford, Taylor & Preston, LLP*, 413 Md. 230, 239 (2010) (*Thomas v. Bethea*, 351 Md. 513, 528-29 (1998)). "As a general rule, an attorney owes a duty of diligence and care only to his direct client/employer." *Goerlich v. Courtney Indus., Inc.*, 84 Md.App. 660, 663 (1990) (citing *Clagett v. Dacy*, 47 Md.App. 23 (1980)).

Here, Defendants concede that "[Mr.] McNutt represented Tower Oaks," (ECF No. 97 ¶ 26)-which is sufficient to satisfy the representation element of Plaintiff's legal malpractice claim. (*See also* ECF No. 93-3 ¶ 8). Whether Mr. McNutt had a retainer

agreement with Oak Plaza is irrelevant,[15] as Plaintiff only alleges that Mr. McNutt committed legal malpractice with respect to his representation of *Tower Oaks*-not Oak Plaza. (*See* ECF No. 2 ¶¶ 61-64).

Moreover, the undisputed evidence demonstrates that Mr. McNutt's duty towards Tower Oaks-arising from his legal representation of the company-also encompasses a duty toward Oak Plaza. As explained in the Audit Report, Oak Plaza as Tower Oaks' sole member "remains entitled to 100% of the profits, losses and net distributions of [Tower Oaks]." (ECF No. 96-5, at 4). According to the Tower Oaks Operating Agreement, Oak Plaza's authorization is required for "major decisions" affecting Tower Oaks' property. (*See* ECF Nos. 104-5, at 3-4; 83-1, at 3-4). As a result, Mr. McNutt violated his duty toward Tower Oaks in disbursing the Funds without Oak Plaza's permission.

Therefore, Plaintiff's motion for summary judgment with respect to Count II against Mr. McNutt will be granted as to liability and Defendants' cross-motion for summary judgment with respect to Count II will be denied.

---

[15] Mr. McNutt acknowledges in his supplemental declaration that he indeed represented Oak Plaza in the Dissolution Case, whose purpose was to "obtain control of the . . . Funds." (ECF No. 97-9 ¶¶ 25, 39).

**IV.   Remaining Issues**

In light of the ruling on Count I, unjust enrichment, Defendants will be required to turn over the funds improperly disbursed to each of them, but those amounts are not clearly established.  As pointed out above, Plaintiff's complaint seeks varying amounts as to each defendant and an overall amount jointly and severally.   The cross-motion for summary judgment seeks different amounts.  (*Compare* ECF No. 2, *with* ECF No. 96-1). Defendants advance various arguments for setoffs or recoupments, giving rise to counter arguments by Plaintiff, such as lack of clean hands.  For Count II, even Plaintiff's cross-motion for summary judgment asks for two different amounts against Mr. McNutt. (ECF No. 96-1 ¶ 146).  At this juncture, it is premature to determine the amount Defendants must repay. Thus, to the extent that Plaintiff sought summary judgment on more than liability at this stage, the motion is denied.

Resolution of the fraud related claims will require either further briefing on summary judgment or trial, once the legal framework is clarified.  And it is not clear what additional damages are sought on those claims that are not recoverable under Counts I and II.

**V.   Conclusion**

For the foregoing reasons, Defendants' joint motion for summary judgment will be denied; Plaintiff's cross-motion for

summary judgment will be granted in part and denied in part; and

Defendants' request for a hearing will be denied.  A separate order

will follow.


                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge