IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| OAK PLAZA, LLC | : | |
| | : | |
| v. | : | Civil Action No. DKC 22-231 |
| | : | |
| DAVID T. BUCKINGHAM, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this state law fraud case brought by the receiver for a limited liability company are three motions for reconsideration filed by Defendants Susan Buckingham, David Buckingham, Richard Buckingham (collectively, the "Siblings"), and Philip McNutt ("Mr. McNutt") (collectively, "Defendants"), (ECF Nos. 115; 116; 118); and a motion to intervene by John Daniel Buckingham, Jr. ("Daniel Buckingham") and Thomas Buckingham, (ECF No. 122). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions for reconsideration and motion to intervene will be denied.[1]

---

[1] Also pending are Mr. McNutt and David Buckingham's unopposed motions for leave to file excess pages, (ECF Nos. 137; 138), which will be granted; and David Buckingham's motion for extension of time to reply, (ECF No. 139), which will be denied as moot in light of Plaintiff's consent to extension, (*see* ECF No. 140).

I.   **Background**[2]

A more detailed factual and procedural background has been set forth in the court's March 26, 2024 memorandum opinion (the "March 26, 2024 Opinion"). (ECF No. 107). In short, Oak Plaza, LLC ("Oak Plaza" or "Plaintiff") is the sole member of Tower Oaks Boulevard, LLC ("Tower Oaks"). (ECF No. 104-4, at 46). A 2007 amendment to Oak Plaza's Operating Agreement designated Daniel Buckingham, Thomas Buckingham, David Buckingham, Richard Buckingham, Susan Buckingham, and John D. Buckingham as Oak Plaza's members. (ECF No. 104-7, at 7). On October 17, 2012, John D. Buckingham (the father of the other Buckinghams) passed away. (ECF No. 93-4 ¶ 42). Thomas Buckingham ceased to be a member of Oak Plaza after he declared bankruptcy in 2012, 2015, and 2016. (ECF Nos. 96-4, at 4; 104-3, at 4). On September 10, 2012, Tower Oaks sued several defendants—including a company named Ronald Cohen Investments—in the Circuit Court for Montgomery County (the "Circuit Court"). *See* Docket, *Tower Oaks Blvd., LLC v. Ronald Cohen Invs., Inc. et al.*, No. 368256V (Circuit Court for Montgomery County) (the "*Cohen* Litigation"); (ECF No. 86-8, at 27). On May 23, 2014, the *Cohen* Litigation resulted in a multi-million-dollar judgment in Tower Oaks' favor. (ECF Nos. 96-5 at 5; 104-4, at 5).

---

[2] The following facts are undisputed unless otherwise noted.

On March 6, 2017, Mr. McNutt picked up a check containing funds partially satisfying the judgment in the *Cohen* Litigation (the "Funds") from the Circuit Court's Court Registry made payable to Tower Oaks and later deposited the check in a bank account (the "Bank Account") in Tower Oaks' name at Access National Bank in Virginia. (ECF Nos. 96-5 at 6; 104-4, at 6).  At the Siblings' direction, Mr. McNutt disbursed the Funds to the Siblings on three separate dates: March 14, 2017, April 16, 2018, and January 16, 2019. (*See* ECF Nos. 93-3 ¶ 91; 104-13, at 16, 21, 31).  Mr. McNutt also disbursed the Funds to himself and his law firm.  (ECF No. 96-5, at 6-7).

On March 29, 2017, Thomas and Daniel Buckingham filed a complaint in the Circuit Court seeking the dissolution of Oak Plaza (the "Dissolution Case").  *See* Docket, *Buckingham v. Oak Plaza, LLC*, No. 431544V (Circuit Court for Montgomery County); (ECF Nos. 86-9, at 7; 85-7).  On September 20, 2018, the Circuit Court issued an opinion and order dissolving Oak Plaza.  (ECF Nos. 96-4; 104-3).  On November 21, 2018, the Circuit Court appointed Samuel Williamowsky ("Mr. Williamowsky") as an auditor "to determine if there are any assets to be wound up and whether or not [Tower Oaks] has any assets which are properly under the jurisdiction of the Court."  (ECF Nos. 96-10, at 1; 104-9, at 1).  On June 26, 2020, Mr. Williamowsky filed his audit report (the "Audit Report"), which determined that "the only asset of Oak Plaza . . . was its

3

unliquidated interest in its wholly owned subsidiary, Tower Oaks . . . , and potential direct and derivative causes of action to recover . . . funds received and paid out by [Tower Oaks.]" (ECF Nos. 96-5, at 4; 104-4, at 4).   The Circuit Court then appointed Keith J. Rosa ("Mr. Rosa") to be "Receiver of Oak Plaza." (ECF No. 1-6, at 36).

On November 19, 2021, Mr. Rosa—acting as Oak Plaza's Receiver—filed a complaint against the Siblings, Cardinal Trust, and Mr. McNutt in the Circuit Court (the "Complaint").  (ECF No. 2).  There are ten counts: (1) unjust enrichment against all Defendants (Count I); (2) legal malpractice against Mr. McNutt (Count II); (3) fraudulent concealment against the Siblings (Count III); (4) conspiracy to commit fraudulent concealment against all Defendants (Count IV); (5) fraudulent concealment against the Siblings (Count V); (6) conspiracy to commit fraudulent concealment against all Defendants (Count VI); (7) constructive fraud against the Siblings (Count VII); (8) aiding and abetting constructive fraud against all Defendants (Count VIII); (9) constructive fraud against the Siblings (Count IX); (10) aiding and abetting constructive fraud against Mr. McNutt (Count X).  (*Id.*).  On January 31, 2022, Mr. McNutt removed the case to this court.  (ECF No. 1).  The parties then filed cross-motions for summary judgment.  (ECF Nos. 82; 97). On March 26, 2024, the court denied Defendants' motion for summary judgment, granted in part and denied in part Plaintiff's cross-

motion for summary judgment, and entered judgment in favor of Plaintiff and against Defendants on the issue of liability in Counts I and II. (ECF Nos. 107; 108).

On May 1, 2024, the Siblings filed a motion for reconsideration. (ECF No. 115). On June 6, 2024, Plaintiff opposed. (ECF No. 128). On June 20, 2024, the Siblings replied. (ECF No. 135). On May 1, 2024, Mr. McNutt filed a motion for reconsideration. (ECF No. 116). On June 6, 2024, Plaintiff opposed. (ECF No. 129). On June 20, 2024, Mr. McNutt replied. (ECF No. 136). On May 1, 2024, David Buckingham filed a motion for reconsideration. (ECF No. 118). On May 6, 2024, David Buckingham filed an amended memorandum in support of his motion for reconsideration. (ECF No. 119). On June 6, 2024, Plaintiff opposed. (ECF No. 130). David Buckingham did not reply.

On May 26, 2024, Daniel and Thomas Buckingham ("Prospective Intervenors") filed a motion to intervene. (ECF No. 122). On June 10, 2024, Defendants opposed. (ECF No. 131). On June 11, 2024, Plaintiff consented to Prospective Intervenors' motion to intervene. (ECF No. 132). On June 17, 2024, Prospective Intervenors replied. (ECF No. 134).

On June 20, 2024, Mr. McNutt and David Buckingham filed unopposed motions for leave to file excess pages. (ECF Nos. 137; 138). On June 21, 2024, David Buckingham filed an unopposed motion for extension of time. (ECF No. 139). On June 25, 2024, David

Buckingham filed a supplement to his motion for extension of time. (ECF No. 140).

## II.  **Motion to Intervene**

Prospective Intervenors seek to intervene as of right and have obtained Plaintiff's consent. (ECF Nos. 122; 132). According to Rule 24(a) of the Federal Rules of Civil Procedure,

> [a] party may intervene as of right when it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

*Am. Coll. of Obstetricians & Gynecologists v. United States Food & Drug Admin.*, 467 F.Supp.3d 282, 286 (D.Md. 2020) (quoting Fed.R.Civ.P. 24(a)(2)).  To establish the right to intervene in an action under Rule 24(a), an intervenor must (1) submit a timely motion; (2) demonstrate a "direct and substantial interest" in the property or transaction; (3) prove that the interest would be impaired if the intervention was not allowed; and (4) establish that the interest is inadequately represented by existing parties. *First Penn-Pacific Life Ins. Co. v. William R. Evans, Chartered*, 200 F.R.D. 532, 536 (D.Md. 2001) (citing *In re Richman*, 104 F.3d 654, 659 (4th Cir. 1997)).  A party moving for intervention under Rule 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements.   While

Prospective Intervenors argue that they have satisfied all four requirements, (ECF No. 123, at 20-21), Richard Buckingham and Mr. McNutt contend otherwise, (ECF No. 131, at 8-15).[3]

As an initial matter, Prospective Intervenors' motion to intervene is untimely.  Prospective Intervenors argue that their motion to intervene is timely because (1) they drafted the motion after learning on May 1, 2024 that the court referred the case to Alternative Dispute Resolution ("ADR"); (2) they filed the motion before the court resolves the pending motions to reconsider; and (3) ADR has not been scheduled.  (ECF No. 123, at 20).  Richard Buckingham and Mr. McNutt counter that Prospective Intervenors' motion to intervene is untimely because (1) Prospective Intervenors have "'la[id] back' for two and a half years without action"; and (2) "[t]here is clear prejudice to the Defendants in

---

[3] Richard Buckingham and Mr. McNutt request that the court strike "[t]he arguments of the Prospective Intervenors regarding the reconsideration of the motions for summary judgment . . . because they are not properly part of a Motion to Intervene." (ECF No. 131, at 2).  In addition, Richard Buckingham and Mr. McNutt challenge Prospective Intervenors' motion to intervene on the basis that there is no accompanying pleading as required by Fed.R.Civ.P. 24.  (ECF No. 131, at 2).  The United States Court of Appeals for the Fourth Circuit, however, has stated that "when the moving party fails to comply strictly with the requirements of Rule 24(c), the proper approach is to disregard non-prejudicial technical defects." *Spring Const. Co. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980).  Given that the motion to intervene provides adequate notice regarding Prospective Intervenors' interest in the litigation, it does not fail solely by virtue of noncompliance with Rule 24(c).  Any arguments going to reconsideration of previous decisions will not be considered at this time.

having to respond to a separate, new party, with new arguments and factual allegations more than two and a half years into this litigation."  (ECF No. 131, at 10).

"[T]imeliness is a 'cardinal consideration' of whether to permit intervention[.]"  *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (quoting *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1981)).  "Rule 24 is silent as to what constitutes a timely application and the question must therefore be answered in each case by the exercise of the sound discretion of the court." *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974). "The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001), *rev'd on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002).  "A reviewing court should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene."  *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) (citing *Com. of Pa. v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976)); *see also Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014) (citing *Gould*, 883 F.2d at 286).

First, Prospective Intervenors moved to intervene at a relatively advanced stage of the proceedings.  Prospective Intervenors did not move to intervene until over two years after this action began in November 2021, at which time discovery had

closed, and the court had already ruled on cross-motions for summary judgment in addition to referring the case to ADR. (*See* ECF Nos. 107; 108; 114). Even though ADR had not been scheduled when Prospective Intervenors moved to intervene, the fact that the case was, and is, progressing towards trial weighs against finding timely intervention. *See Alt*, 758 F.3d at 591 (affirming a trial court's determination that a motion to intervene filed during ongoing summary judgment briefing was untimely because "the [trial] court was reasonably reluctant to arrest the momentum of the lawsuit so near to its final resolution").

Second, allowing intervention would likely cause delays resulting in prejudice to Defendants. As recognized by the Fourth Circuit, "[t]he delay caused by substantial additional litigation can demonstrate prejudice to existing parties." *Scott v. Bond*, 734 F.App'x 188, 192 (4th Cir. 2018) (citing *Gould*, 883 F.2d at 286-87). The potential for prejudice also weighs against finding timely intervention.

Third, Prospective Intervenors have not "provide[d] a plausible justification for [their] tardy motion to intervene." *See id.* (citing *Alt*, 758 F.3d at 591; *Gould*, 883 F.2d at 286). "[A] delay in filing might be justified if a person never received notice of a class action implicating his interests, or if there had been a substantial 'change of circumstances' in the case[.]" *Id.* (first citing *Crawford v. Equifax Payment Services, Inc.*, 201

9

F.3d 877, 881 (7th Cir. 2000); and then quoting *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)). Neither apply here. Prospective Intervenors merely assert that the court's referral of the case to ADR was the impetus for intervention, but it is unclear how the ADR referral excuses their delayed intervention. Prospective Intervenors' failure to provide a reasonable explanation further weighs against finding timely intervention.

Moreover, Prospective Intervenors have not demonstrated that Thomas Buckingham has a direct interest in the Funds. Prospective Intervenors assert that they "claim an interest in the judgment against the Defendants[.]" (ECF No. 123, at 21; *see also* ECF No. 134, at 2 ("[Prospective] Interven[o]rs have a claim to any amount recovered by [Mr. Rosa] arising from their status as members of Oak Plaza[.]")). "A direct or substantial interest exists when a party 'stand[s] to gain or lose by the direct legal operation of the district court's judgment' in the underlying action." *Obstetricians & Gynecologists*, 467 F.Supp.3d at 286 (quoting *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)). As the court previously explained, "Thomas Buckingham ceased to be a member of Oak Plaza after he declared bankruptcy in 2012, 2015, and 2016." (ECF No. 107, at 4) (citing ECF Nos. 96-4, at 4; 104-3, at 4). Given that only members and unadmitted assignees of Oak Plaza are entitled to distributions from Oak Plaza, (*see* ECF Nos. 87-1, at

10

3, 8-10; 104-6, at 6-10; 96-7, at 8-10), Thomas Buckingham does not possess any interest in the Funds and is therefore further precluded from intervention on this basis.[4]

Prospective Intervenors also fail to show that Plaintiff does not adequately represent Daniel Buckingham's interest. Prospective Intervenors argue that "[Mr. Rosa] is pursuing the interests of the corporate entity Oak Plaza and not those of [the Prospective] Interven[o]rs."   (ECF No. 123, at 21).   Richard Buckingham and Mr. McNutt counter that Mr. Rosa's interest closely aligns with that of Daniel Buckingham.  (ECF No. 131, at 13).  The "burden of showing an inadequacy of representation is minimal." *Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1971)).   Nevertheless, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance."  *Id.* (citing *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844 (5th

---

[4] Although Prospective Intervenors contend that Daniel Buckingham does not possess a direct interest because he is "at best, [a] contingent beneficiar[y,]" (ECF No. 131, at 11-12), an "interest [that] is contingent on the outcome of other litigation" is sufficient for the purpose of intervention, *Teague*, 931 F.2d at 261 (citing *New Hampshire Ins. Co. v. Greaves*, 110 F.R.D. 549 (D.R.I. 1986); *Hartford Accident & Indem. Co. v. Crider*, 58 F.R.D. 15 (N.D.Ill. 1973)).

Cir. 1973)).   Here, Plaintiff and Prospective Intervenors share the same objective of recovering the Funds.   While Prospective Intervenors contend that Daniel Buckingham and Mr. Rosa's interests are "related but not identical[,]" they do not argue, much less show, that they are adverse.   (ECF No. 134, at 5).   Nor do Prospective Intervenors argue that Mr. Rosa has engaged in collusion or nonfeasance.   Hence, Prospective Intervenors' intervention is improper on the additional basis that they have not demonstrated an inadequacy of representation.

In conclusion, the motion for intervention will be denied because (1) it is untimely; (2) Thomas Buckingham lacks a direct interest in the Funds; and (3) Prospective Intervenors have not shown that their interests are inadequately represented by Mr. Rosa.[5]

### III. Motions for Reconsideration

#### A. Standard of Review

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case.   In the Fourth Circuit, the precise standard governing a motion for reconsideration of an interlocutory order is unclear.   *See*

---

[5] Alternative Dispute Resolution is a flexible process handled ably by our magistrate judges.   If informal participation in ADR by Daniel and/or Thomas Buckingham is, at any point, helpful or necessary to resolution of this case, the magistrate judge will be able to discuss it with the parties.

*Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991).  However, courts in this circuit frequently look to the standards articulated in Rules 59(e) and 60(b) for guidance in considering such motions.  *See Akeva, LLC v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565–66 (M.D.N.C. 2005).

> Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided. Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions.  Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice.

*Id.* (citations omitted); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. 08-cv-409-PJM, 2010 WL 3059344, at *1–2 (D.Md. Aug. 4, 2010) (applying this three-part test when evaluating a motion for reconsideration of an interlocutory order).  Importantly, a motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court.  *See Beyond Sys., Inc.*, 2010 WL 3059344, at *2.[6]

---

[6] Mr. McNutt relies on out-of-circuit cases, all of which are irrelevant here, in support of his contention that the court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law[.]"  (ECF No. 116-1, at 10) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*

**B. Mr. McNutt's Motion for Reconsideration**

Mr. McNutt seeks reconsideration with respect to Counts I and II on the following bases: (1) Daniel Buckingham is the real party-in-interest; (2) Defendants did not fail to respond to Plaintiff's argument relating to whether the Circuit Court found that David Buckingham had management authority over manager of Tower Oaks; (3) Plaintiff did not refute or adequately respond to Defendants' Amended Joint Statement of Undisputed Facts; (4) the Siblings are entitled to the Funds; (5) Mr. McNutt did not neglect a reasonable duty towards Tower Oaks such that he is liable for legal malpractice; and (6) Plaintiff's legal malpractice claim is barred by the statute of limitations. (ECF No. 116-1). While Mr. McNutt largely attempts to relitigate issues that were already considered and decided, the court will endeavor to explain.

**1. Real Party-in-Interest**

Mr. McNutt argues that "[t]his case represents an obvious attempt to take money distributed to the Defendants and to redistribute that money to Daniel Buckingham or, at least, as

---

by *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)) (citing *HK Sys. Inc. v. Eaton Corp.*, No. 02-cv-1103-LSA, 2007 WL 3012993 (E.D.Wis. Oct. 12, 2007), *aff'd*, 553 F.3d 1086 (7th Cir. 2009); *Pittman v. Cnty. of San Diego*, No. 09-cv-1952-WQH-WVG, 2010 WL 4570252 (S.D.Cal. Nov. 3, 2010); *Advanced Hydraulics, Inc. v. Eaton Corp.*, 415 F.Supp. 283 (N.D.Ill. 1976)).  The legal standard identified by Mr. McNutt does not comport with the proper standard for evaluating a motion to reconsider an interlocutory order, as explained above.

directed by Daniel Buckingham[,]" because "[Mr. Rosa] . . . is being paid solely by Daniel Buckingham[.]"   (ECF No. 116-1, at 31).   As a result, Mr. McNutt concludes that "Daniel Buckingham is the 'real party-in-interest.'"   (*Id.*) (citing Md. Rules 2-201; *Hooke v. Equitable Credit Corp.*, 42 Md.App. 610 (1979); ECF No. 97-1).   Mr. McNutt is incorrect, as the real party-in-interest here is not determined by the person paying Mr. Rosa's expenses. While the Circuit Court indeed ordered Daniel Buckingham to "advance funds to cover the initial fees and costs of [Mr. Rosa,]" (ECF No. 97-1, at 5), as the court explained in a prior opinion, "[i]n derivative suits, the real plaintiff in interest is the company whose rights are asserted. . . . Here, then, Tower Oaks is the real plaintiff in interest because Oak Plaza brings this suit derivatively to assert Tower Oaks' legal claims against Defendants[,]" (ECF No. 41, at 10-11 (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 n.3 (4th Cir. 2004); *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 614 (4th Cir. 2004), *rev'd on other grounds*, 546 U.S. 81 (2005); *Certain Interested Underwriters at Lloyd's of London v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994) ("[T]he real party in interest is the person who is entitled to enforce the right asserted[.]"); *see also* ECF No. 107, at 33 ("'[N]either Thomas [n]or Daniel [Buckingham] are parties to this case[]' because '[t]he Plaintiff in this case is Oak Plaza, derivatively and on behalf of Tower Oaks[.]'" (quoting

ECF No. 96-1 ¶ 110))).   Thus, Mr. McNutt's argument that Daniel Buckingham is the real party-in-interest fails to justify reconsideration.

### 2. Failure to Respond

Mr. McNutt argues that the court erred in determining that "Defendants failed to counter the Plaintiff's Argument in its Motion for Summary Judgment relating to the Circuit Court findings of whether David [Buckingham] had authority to act as manager of Tower Oaks."   (ECF No. 116-1, at 12).   Plaintiff contends otherwise.   (ECF No. 129-1, at 13-14).

As explained in a prior opinion, Plaintiff countered Defendants' argument that "the Circuit Court in the *Cohen* Litigation determined that David Buckingham had the authority to act on behalf of Tower Oaks[,]" by stating that "the Circuit Court 'd[id] not make any findings regarding David Buckingham's authority to act on behalf of Tower Oaks[,]' but even if it did, it did not determine 'whether David Buckingham was a manager of either Tower Oaks . . . or Oak Plaza[.]'"   (ECF No. 107, at 23) (first citing ECF No. 93 ¶¶ 179-193; and then citing ECF No. 96-1 ¶¶ 92-93).   Mr. McNutt maintains that Defendants then responded to Plaintiff's argument in paragraph 35 of their opposition to Plaintiff's cross-motion for summary judgment and reply to Plaintiff's opposition to Defendants' motion for summary judgment.

(ECF No. 116-1, at 12).[7]  In paragraph 35 of their opposition to
Plaintiff's cross-motion for summary judgment and reply to
Plaintiff's opposition to Defendants' motion for summary judgment,
Defendants state:

> The Plaintiff disputes the factual allegations
> submitted by the Defendants regarding the
> appointment of managers and officers of Oak
> Plaza and Tower Oaks, but provides no basis
> for that dispute other than vague references
> that "this action . . . has been found to be
> improper by multiple courts." (D-96-2)
> Plaintiff's Responses to Defendants Statement
> of Undisputed Facts . . . , p. 3, ¶ (17).
> However, the Plaintiff provided no counter to
> the decisions and rulings of the Circuit Court
> in [the *Cohen* Litigation], the source of the
> funds at issue in the Plaintiff's Complaint.
> See, for example, Defendants Amended Joint
> Statement of Undisputed Facts . . . , at ¶¶ 90-
> 92. See also David's Declaration at ¶¶ 29 and
> 30 and Va. Code Ann. § 13.1-1022 and 1024
> (Defendants' Statement, at ¶ 77. See also Md.
> Code § 4A-403. Finally, see Defendants'
> Memorandum (D-93), pp. 35, 36, ¶ 168.

(ECF No. 97 ¶ 35).  Even if Defendants did not concede the point
by failing to respond, as Plaintiff observes, "Defendants did not
. . . present[] the Court with an Order or Opinion from the Circuit
Court affirmatively stating that David Buckingham, or any of the
Siblings, were managers of either Oak Plaza or Tower Oaks." (ECF
No. 129-1, at 13).  The record only shows that the *Cohen* Litigation

---

[7] Mr. McNutt also contends that "Plaintiff's argument is
defective because [Plaintiff] makes [its] argument without a
specific reference to the record." (ECF No. 116-1, at 12).  Mr.
McNutt is incorrect, as Plaintiff indeed cites to the record. (*See*
ECF No. 96-1 ¶ 92) (citing ECF No. 84-9).

defendants filed an April 29, 2013 motion to dismiss and a July
13, 2013 motion for summary judgment arguing that David Buckingham
did not have authority to act on behalf of Tower Oaks, (ECF Nos.
84-3, at 1; 84-5, at 1-2), both of which were denied by the Circuit
Court, (ECF Nos. 84-4 (order denying motion to dismiss); 84-6
(order denying motion for summary judgment)).   Without any
corresponding analysis or findings in the record, such denials do
not show that the Circuit Court determined, *on the merits*, that
David Buckingham possessed management authority over Tower Oaks
and Oak Plaza.   Because Mr. McNutt has not demonstrated that the
court committed clear error, his assertion that Defendants
countered Plaintiff's argument that the Circuit Court did not make
any findings regarding David Buckingham's management authority
over Tower Oaks and Oak Plaza fails to justify reconsideration.

### 3. Plaintiff's Response to Defendants' Amended Joint Statement of Undisputed Facts

Mr. McNutt argues that "Plaintiff has failed to properly
refute the Defendants' Amended [Joint] Statement of [Undisputed]
Facts and has produced no admissible material which counters or
disputes the 7 Declarations submitted by Defendants."   (ECF No.
116-1, at 14).   In addition, Mr. McNutt contends that "Plaintiff's
responses . . . to the Defendants' Amended [Joint] Statement of
Undisputed Facts . . . are inadequate, meaning that essentially
all of the Defendants' factual allegations are deemed

uncontested[,]" because "Plaintiff cannot simply say that it objects to the 'tenor' of the Defendants['] factual statements . . . and then avoid denial of its Motion seeking summary judgment[.]" (*Id.* at 14-15).  Plaintiff maintains that he adequately responded to Defendants' Amended Joint Statement of Undisputed Facts, and Mr. McNutt "already argued this point in the original Summary Judgment filings[.]"  (ECF No. 129-1, at 12-13).

According to the Supreme Court of the United States, "[e]vidence appropriate for summary judgment need not be in a form that would be admissible at trial . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As explained in the March 26, 2024 Opinion, the evidence in the record sufficiently supports summary judgment on Counts I and II in favor of Plaintiff and against Defendants and Mr. McNutt, respectively.  (*See* ECF No. 107, at 29-33, 37-39). Additionally, in challenging the adequacy of Plaintiff's responses to Defendants' Amended Joint Statement of Undisputed Facts, Mr. McNutt reiterates arguments from Defendants' opposition to Plaintiff's cross-motion for summary judgment and reply to Plaintiff's opposition to Defendants' motion for summary judgment. (*See* ECF No. 97 ¶¶ 3-4).  Regardless of whether Plaintiff's response to Defendants' joint statement of undisputed facts alone

is sufficient to justify summary judgment on Counts I and II in its favor, as explained in the March 26, 2024 Opinion, Plaintiff has adequately shown that the evidence in the record supports summary judgment on Counts I and II in Plaintiff's favor. (*See* ECF No. 107). Hence, Mr. McNutt's arguments regarding whether Plaintiff has properly refuted and responded to Defendants' amended joint statement of undisputed facts fail to justify reconsideration.

### 4. The Siblings' Entitlement to the Funds

Mr. McNutt argues that "[a]t minimum there is a material dispute whether [the Siblings] are entitled to the [F]unds . . . by virtue of their efforts and their expenditures and the value of their time and effort in attempting to preserve the Tower Oaks Property and the prosecution of the Cohen Litigation." (ECF No. 116-1, at 16). This argument was considered and rejected in the March 26, 2024 Opinion:

> In light of the ruling on Count I, unjust enrichment, Defendants will be required to turn over the funds improperly disbursed to each of them, but those amounts are not clearly established. As pointed out above, Plaintiff seeks varying amounts as to each defendant and an overall amount jointly and severally. The cross-motion for summary judgment seeks different amounts. (*Compare* ECF No. 2, *with* ECF No. 96-1). Defendants advance various arguments for setoffs or recoupments, giving rise to counter arguments by Plaintiff, such as lack of clean hands. For Count II, even Plaintiff's cross-motion for summary judgment asks for two

20

> different amounts against Mr. McNutt. (ECF
> No. 96-1 ¶ 146).   At this juncture, it is
> premature to determine the amount Defendants
> must repay.    Thus, to the extent that
> Plaintiff sought summary judgment on more than
> liability at this stage, the motion is denied.

(ECF No. 107, at 40).  Thus, Mr. McNutt's argument with respect to the Siblings' entitlement to the Funds fails to justify reconsideration.

**5. Reasonable Duty**

Mr. McNutt argues that the court erred in granting summary judgment against him with respect to Count II because (1) he does not owe a duty to Daniel Buckingham, the real party-in-interest; (2) the court applied "the [w]rong [l]egal [b]asis"; and (3) he "did not neglect a reasonable duty[.]" (ECF No. 116-1, at 20-28). Plaintiff counters that (1) "th[e] Court did not find that Mr. McNutt had a duty to Daniel Buckingham"; (2) the court "applied the correct 'legal basis'"; and (3) Mr. McNutt indeed neglected a reasonable duty towards Tower Oaks. (ECF No. 129-1, at 5-10).

As an initial matter, the court did not determine that Mr. McNutt is liable for legal malpractice based on any duty owed to Daniel Buckingham.  Rather, the court found that Mr. McNutt owes a duty to Tower Oaks, which, as explained above, is the real party-in-interest. (*See* ECF No. 107, at 39).  Moreover, in arguing that the court applied "the [w]rong [l]egal [b]asis[,]" Mr. McNutt reiterates the same elements of a malpractice claim that were

applied by the court.  (*Compare* ECF No. 116-1, at 26 (citing *Suder v. Whiteford, Taylor & Preston, LLP*, 413 Md. 230, 244-45 (2010)), *with* ECF No. 107, at 38 (citing *Suder*, 413 Md. at 239)).[8]

Mr. McNutt's argument that he did not neglect a reasonable duty towards Tower Oaks fares no better.  First, Mr. McNutt challenges the court's reliance on the Audit Report because it "was obtained without any investigation and was paid for by Daniel [Buckingham,] who was . . . the real party[-]in[-]interest."  Mr. McNutt also contends that the Audit Report "has no relevance to any [of his] actions . . . especially since there is no statement or contention that [he] acted against any direction given [to] him by Daniel [Buckingham]."  Plaintiff responds that "[t]he Audit Report was prepared at the direction of the Circuit Court, and [Mr. Williamowsky]'s findings were only made after a painstaking investigation."  (ECF No. 129-1, at 7).  The Audit Report, as part of the record, must be taken as true for the purposes of summary judgment.  Additionally, as explained in the March 26, 2024 Opinion, the Audit Report, which states that Oak Plaza is entitled

---

[8] Mr. McNutt also argues that the Funds would have been depleted by other claimants had he not taken the Funds from the Circuit Court's Court Registry.  (ECF No. 116-1, at 26-27).  As Plaintiff contends, however, "Mr. McNutt forgets . . . that his removal of the funds from the Court Registry is not the primary basis for the malpractice claim against him."  (ECF No. 129-1, at 10).  Rather, "[t]he primary basis for the malpractice claim against [Mr. McNutt] was his disbursement of those funds without authorization over the course of two (2) years after they were removed from the Court Registry."  (*Id.*).

to all of Tower Oaks' profits, losses, and distributions, demonstrates that Mr. McNutt violated his duty toward Tower Oaks by disbursing the Funds without Oak Plaza's permission. (ECF No. 107, at 30).  Hence, the Audit Report does not need to contain statements regarding whether Mr. McNutt acted contrary to Daniel Buckingham's directions in order to be relevant to the determination of Mr. McNutt's duty.

Second, Mr. McNutt asserts that the court erroneously relied on Thomas Buckingham's communication with Mr. McNutt, which "is irrelevant, immaterial, and certainly does not indicate [his] violation of any duty[.]"  (ECF No. 116-1, at 21).  The court, however, did not mention any communication between Thomas Buckingham and Mr. McNutt in its analysis with respect to Plaintiff's legal malpractice claim.  (*See* ECF No. 107, at 37-39).[9]

Third, Mr. McNutt argues that Daniel Buckingham does not have management authority over Oak Plaza and Tower Oaks because he failed to assert authority over those entities.  (ECF No. 116-1,

---

[9] In support of his argument that any communication between him and Thomas Buckingham is irrelevant to determining his liability for legal malpractice, Mr. McNutt states that "Daniel had claimed to the Siblings that he had transferred his interest in [Tower Oaks.]"  (ECF No. 116-1, at 21).  The relevance of the alleged transfer of Daniel's interest in Tower Oaks is unclear. More importantly, the Circuit Court has held that "even if Daniel [Buckingham] had attempted to transfer his membership interest, such a transfer was null and void."  (ECF No. 96-4, at 5).

at 24).  Plaintiff responds that "Mr. McNutt knew, or at the very
least, should have known that the Siblings had no authority—actual
or otherwise—to act on behalf of Tower Oaks[.]"  (ECF No. 129-1,
at 9).  Mr. McNutt's argument repeats those already raised in
Defendants' motion for summary judgment as well as their opposition
to Plaintiff's cross-motion for summary judgment and reply to
Plaintiff's opposition to Defendants' motion for summary judgment.
(ECF Nos. 93 ¶¶ 170-78; 97 ¶ 7(m)).  As explained in the March 26,
2024 Opinion, Daniel Buckingham possessed management authority
over Oak Plaza and Tower Oaks, and his "lack of diligence in
fulfilling managerial duties . . . do[es] not necessarily manifest
a clear intent wholly to relinquish a managerial right."  (*See* ECF
No. 107, at 14, 18).  Mr. McNutt's mere disagreement with the
court's reasoning is not a proper basis for reconsideration.

Alternatively, Mr. McNutt contends that "Plaintiff agrees
that '[w]ithout the Siblings' . . . approval Tower Oaks had no
authority to settle with [a claimant to the Funds,] thus inferring
that, at the time of the Disbursement from the Circuit Court's
registry, [the Siblings] were the actual managers of Tower
Oaks.[']"  (ECF No. 116-1, at 21) (quoting ECF No. 93-1 ¶ 178)
(citing ECF No. 96-2 ¶ 31).[10]  The Fourth Circuit has cautioned
that a motion for reconsideration "may not be used . . . to raise

---

[10] Although Mr. McNutt cites to paragraph 31 in ECF No. 96-2,
he appears to refer to paragraph 33 instead.

arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Even so, requiring the Siblings' approval as a precondition to settlement with a claimant to the Funds does not necessarily deprive Daniel Buckingham of all management authority.

Fourth, Mr. McNutt insists that "[a]though [the Circuit Court]'s decision does conclude that Daniel is a member for purposes of dissolution, her decision does not bind anyone not a party to that decision[.]" (ECF No. 116-1, at 25). Defendants have already made an identical argument in their opposition to Plaintiff's cross-motion for summary judgment and reply to Plaintiff's opposition to Defendants' motion for summary judgment. (*See* ECF No. 97 ¶ 55) (citing ECF Nos. 85-7; 85-9; 93-3 ¶ 77). As the court explained in the March 26, 2024 Opinion, such an argument "amount[s] to a collateral attack on the Circuit Court's dissolution of Oak Plaza, and this court does not have the authority to overturn a facially valid order of the state court." (ECF No. 107, at 29).

Fifth, Mr. McNutt argues that Daniel Buckingham is not entitled to the Funds on the basis that (1) Daniel and Thomas Buckingham did not demand money from the Funds in their efforts to dissolve Oak Plaza because they "did not deem they were entitled

25

to those funds"; and (2) the Circuit Court held that "[Daniel and Thomas Buckingham] were not entitled to the [F]unds and that . . . they waited too long to file any action seeking to recover the [F]unds that were disbursed in March[] 2017[.]" (ECF No. 116-1, at 22, 24). As explained above, only Oak Plaza and Tower Oaks are entitled to the Funds.[11] Accordingly, whether Daniel Buckingham considers himself *personally* entitled to the Funds post-dissolution is irrelevant. Furthermore, the Circuit Court merely denied Daniel and Thomas Buckingham's request for a preliminary injunction in furtherance of the judicial dissolution of Oak Plaza in part because the Funds had been taken from the Circuit Court's Court Registry. (*See* ECF No. 91-2). Contrary to Mr. McNutt's contention, the Circuit Court did not make any findings regarding Daniel and Thomas Buckingham's entitlement to the Funds.

In sum, Mr. McNutt arguments with respect to whether he has fulfilled a reasonable duty fails to justify reconsideration with respect to Count II.

---

[11] Thus, Mr. McNutt's additional argument that "there is at least a material dispute of fact [about] whether Daniel [Buckingham] was damaged by any alleged negligence" by him misses the point. (ECF No. 116-1, at 26). Here, Mr. McNutt's liability for legal malpractice is predicated on the damages caused to *Tower Oaks*—not Daniel Buckingham—as a result of Mr. McNutt's unauthorized disbursements of the Funds to the Siblings and himself. (*See* ECF No. 107, at 37-39).

## 6. Statute of Limitations

Mr. McNutt argues that Count II is untimely[12] because the limitations period began running prior to June 2018, when multiple events would have made Daniel Buckingham "suspicious[.]"[13]  (*See* ECF No. 116-1, at 18) (citing ECF No. 82-2 ¶¶ 200, 201, 203-206, 210, 216-218, 221-226, 232, 233, 237, 238, 241-245, 246-253). Specifically, Mr. McNutt contends that Daniel and Thomas Buckingham's

> Motion for Injunctive Relief [filed in the Circuit Court] and the[ir] attempts to remove [Mr.] McNutt as counsel [for Oak Plaza and Tower Oaks], along with the ruling by [the Circuit Court] on the Injunction Motion, all prior to three years before the Complaint[,] simply emphasize that Daniel and Thomas [Buckingham] had enough knowledge that the

---

[12] Mr. McNutt also suggests that "the Court's determination on limitations as to the whole of the Plaintiff's Complaint is not correct" for the same reasons that Count II is untimely, (*see* ECF No. 116-1, at 17).

[13] Mr. McNutt relies on *Whiteford Taylor & Preston, L.L.P. v. SENS, Inc.*, No. 21-cv-02520-LKG, 2022 WL 3019792, at *8 (D.Md. July 29, 2022) (citing *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A*, 152 Md.App. 698, 714 (2003)), *aff'd sub nom. Sens, Inc. v. Whiteford Taylor & Preston, LLP*, No. 22-1838, 2023 WL 7410971 (4th Cir. Nov. 9, 2023), in support of the contention that a party alleging malpractice has a duty to inquire when "something occurs to make the party suspicious."  Mr. McNutt, however, neglects to mention the *SENS* court's additional explanation that "the Maryland discovery rule tolls the running of th[e] statute of limitations for [a malpractice] claim until such time as the [plaintiffs] knew of circumstances which would cause a reasonable person in their position to investigate, with reasonable diligence, and such investigation would have led to the discovery of [the defendant]'s alleged legal malpractice."  *Id.*

> statute of limitations was running as early as
> March[] 2017 but no later than April[] 2018.

(*Id.* at 29; *see also id.* at 17, 30 (citing ECF Nos. 97 ¶ 25; 82-2
¶¶ 241, 242, 244)).   Defendants made similar arguments in their
motion for summary judgment as well as their opposition to
Plaintiff's cross-motion for summary judgment and reply to
Plaintiff's opposition to Defendants' motion for summary judgment.
(*See* ECF Nos. 93 ¶ 134; 97 ¶¶ 24-25).   As the court explained in
the March 26, 2024 Opinion,

> the 2017 dissolution suit gave Daniel
> Buckingham reason to investigate Oak Plaza's
> assets and put him on inquiry notice of any
> relevant information he "had the ability to
> ascertain, through due diligence and based
> upon matters of public record[.]" . . . Had
> Daniel [Buckingham] conducted a reasonable
> investigation in 2017, he may have found that
> the [C]ircuit [C]ourt had released the money
> from its registry, but it is unclear how he
> could have found the Defendants' private
> contract or their newly created bank account.
> Nor did he have a way to discover the
> disbursements themselves—one of which did not
> occur until 2019 anyway.

(ECF No. 107, at 26-27) (alterations in original) (quoting *Oak
Plaza, LLC v. Buckingham*, No. 22-cv-231-DKC, 2023 WL 2537661, at
*13 (D.Md. Mar. 16, 2023)).[14]   Therefore, Mr. McNutt's arguments

---

[14] Although Mr. McNutt contends that "the Court did not comment
on the arguments made by the Defendants regarding the [timeliness]
of the malpractice claim in Count II[,]" the court's explanation
in its prior opinion applies to those arguments.   (ECF No. 116-1,
at 17).

with respect to the statute of limitations fail to justify reconsideration.

In sum, because Mr. McNutt has not identified any intervening changes in the law, new evidence, or clear error, his motion for reconsideration will be denied.

**C. The Siblings' Motion for Reconsideration**

The Siblings seek reconsideration of the March 26, 2024 Opinion and Order[15] on the basis that the complaint was untimely. (ECF No. 115-1, at 2).  Specifically, the Siblings argue that Daniel and Thomas Buckingham knew that in March 2017, the Funds were withdrawn from the Circuit Court's Court Registry by Mr. McNutt but failed to make any inquiry that would reveal that "Defendants were in control of the [F]unds and that a substantial amount of the [F]unds was disbursed in Spring 2017."  (*Id*.). Defendants made a similar argument in their motion for summary judgment as well as their opposition to Plaintiff's cross-motion for summary judgment and reply to Plaintiff's opposition to Defendants' motion for summary judgment.  (*See* ECF Nos. 93 ¶¶ 131-32; 97 ¶¶ 16-21).   As explained in the March 26, 2024 Opinion,

> Plaintiff's causes of action do not solely
> arise from Mr. McNutt's withdrawal of the

---

[15] Specifically, the Siblings request that the court "either grant summary judgment in favor of the Defendants as to Count I of the Complaint, grant summary judgment in favor of the Defendants on all Counts of the Complaint, or alternatively, reconsider its Judgments on Counts I and II and deny the Plaintiff's Motion for Summary Judgment on those Counts[.]"  (ECF No. 115-1, at 5).

> Funds.  Plaintiff's causes of action are also
> predicated on the "Agreement to Escrow Funds,"
> depositing of the Funds in the Bank Account
> unknown to Daniel Buckingham, and subsequent
> disbursements of the Funds, (*see* ECF No. 2)—
> all of which must have occurred, and be
> discoverable, before the limitations period
> can accrue.  Thus, the limitations period
> began running when the Audit Report was
> released on June 26, 2020—the first time
> Daniel Buckingham was able reasonably and
> fully to ascertain Defendants' actions with
> respect to the Funds after the final
> disbursement of the Funds in 2019.

(ECF No. 107, at 27-28).  Additionally, as explained above, Daniel Buckingham would not be able to discover the disbursements themselves via public records.  Thus, the Siblings' motion for reconsideration will be denied because it fails to identify any intervening changes in the law, new evidence, or clear error.

### D. David Buckingham's Motion for Reconsideration

David Buckingham seeks reconsideration with respect to Count I on the basis that (1) Defendants did not fail to respond to Plaintiff's argument relating to whether the Circuit Court found that David Buckingham had management authority over manager of Tower Oaks; (2) the Siblings are managers of Tower Oaks; and (3) Plaintiff fails to provide and cite to evidence in relation to the issues of unjust enrichment, recoupment, setoff, and unclean hands.  (ECF No. 119-1).[16]  Plaintiff counters that the court did

---

[16] Despite requesting reconsideration only with respect to Count I in his motion for reconsideration and elsewhere in his supporting memorandum, (*see* ECF Nos. 118; 119-1), David Buckingham

not err in holding that the Siblings are not managers of Tower
Oaks and Defendants are liable for unjust enrichment. (ECF No.
130-1, at 5-9, 10-12). Plaintiff also notes that the court has
not yet ruled on damages, and contends that the clean hands
doctrine is inapplicable here. (*Id.* at 12-13).

As explained above, the argument that Defendants did not fail
to respond to Plaintiff's argument relating to whether the Circuit
Court found that David Buckingham had management authority over
manager of Tower Oaks does not justify reconsideration. Given
that the court in the March 26, 2024 Opinion did not decide the
issue of damages, David Buckingham's arguments regarding
recoupment, setoff, and unclean hands are not proper bases for
reconsideration. Furthermore, the court has already considered
and rejected the argument that the Siblings are managers of Tower
Oaks in the March 26, 2024 Opinion, in addition to determining
that the record contains sufficient evidence showing that
Defendants are liable for unjust enrichment. (*See* ECF No. 107, at
11-23, 29-33).

---

argues that "[b]ecause there is no evidence of entrustment,
Defendants request that summary judgment in favor of the Defendants
be awarded on the following counts: Counts V, VI, VII, VIII, and
IX[,]" (ECF No. 119-1, at 25). Counts VII and VIII were previously
dismissed. (ECF Nos. 53; 54). Moreover, the court's decision in
the March 26, 2024 Opinion did not analyze the issue of
entrustment. (*See* ECF No. 107).

David Buckingham insists that Defendants are not liable for unjust enrichment because Plaintiff did not provide evidence that the distribution of the Funds to the Siblings were not authorized by Daniel Buckingham as "compensation." (ECF No. 119-1, at 26-27). David Buckingham also contends that in various instances, Plaintiff's contentions that Defendants took the Funds belonging to Oak Plaza without Daniel Buckingham's authorization lack evidentiary support. (*Id.* at 27-28). To the extent that David Buckingham attempts to raise a new legal theory that Daniel Buckingham actually authorized the distribution of the Funds to the Siblings, he may not do so on a motion for reconsideration. Therefore, David Buckingham's motion for reconsideration will be denied because it fails to identify any intervening changes in the law, new evidence, or clear error.

## IV. Conclusion

For the foregoing reasons, the motions for reconsideration and motion to intervene will be denied. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
